**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| A.D. SIMS, LLC, on behalf of a class of similarly situated businesses and individuals, <br><br> Plaintiff(s), <br><br> v. <br><br> WINTRUST FINANCIAL CORPORATION; WINTRUST BANK, N.A; BANK OF AMERICA CO.; BANK OF AMERICA N.A.; RETAIL CAPITAL LLC DBA CREDIBLY; MODERN BANK MANAGEMENT, LLC; MODERN BANK N.A.; CRB GROUP INC.; CROSS RIVER BANK, INC.; BLUEVINE CAPITAL INC.; and; DOE LENDERS 1 to 4,975, inclusive, <br><br> Defendants. | No. 1:20-cv-_____ |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff A.D. Sims LLC ("AD Sims") brings this class action on behalf of itself and those similarly situated (hereinafter "Plaintiff") against Defendants Wintrust Financial Corporation; Wintrust Bank N.A.; Bank of America Co.; Bank of America N.A.; Retail Capital LLC DBA Credibly; Modern Bank Management, LLC; Modern Bank N.A.; CRB Group, Inc.; Cross River Bank, Inc.; BlueVine Capital Inc.; and Doe Lenders 1 to 4,975, inclusive (collectively, "Defendants") as follows:

**THE PARTIES**

1. AD Sims is a limited liability company existing and operating in good standing under the laws of the State of Illinois, with its principal place of business located in Cook County, Illinois. The firm specializes in providing financial advisory and related consulting services to small businesses.

2. Upon information and belief, Defendant Wintrust Financial Corporation ("WFC") is an Illinois corporation and the parent company of Defendant Wintrust Bank N.A. WFC is a financial holding company that operates 15 chartered community banks in Northern Illinois and Southern Wisconsin. Upon information and belief, through its subsidiaries, WFC conducts substantial business in this District.

3. Upon information and belief, Defendant Wintrust Bank N.A. ("WB") is a federally-chartered bank and a subsidiary of Defendant WFC. Upon information and belief, Defendant WB conducts substantial business within this District.

4. Upon information and belief, Defendant Bank of America, Co. ("BofA Co.") is a Delaware corporation and the parent company of Defendant Bank of America N.A. ("BofA"). It is an American multinational investment bank and financial services company. Upon information and belief, through its subsidiaries, BofA Co. conducts substantial business within this District.

5. Upon information and belief, Defendant BofA is a North Carolina corporation, a federally-chartered bank, and a subsidiary of Defendant BofA Co. Upon information and belief, BofA conducts substantial business within this District.

6. Upon information and belief, Defendant Retail Capital LLC d/b/a Credibly ("Credibly") is a New York limited liability company. Credibly provides small business loans, working capital, and business expansion loans. Upon information and belief, Credibly conducts substantial business within this District.

7. Upon information and belief, Defendant Modern Bank Management, LLC ("MBM") is a Delaware limited liability company. It is the parent company of Defendant Modern Bank N.A. ("MB") Upon information and belief, MBM conducts substantial business within this District.

8. Upon information and belief, Defendant MB is a federally-charted bank in New York, and a subsidiary of Defendant MBM. It is a digital banking service that provides checking and savings accounts, certificates of deposit ("CDs"), and online banking. Upon information and belief, MB conducts substantial business within this District.

9. Upon information and belief, Defendant CRB Group, Inc. ("CRBG") is a New Jersey corporation and the parent company of Defendant Cross River Bank, Inc. ("CRBI"). Upon information and belief, CRBG through its subsidiary conducts substantial business in this District.

10. Upon information and belief, Defendant CRBI is a subsidiary of Defendant CRBG. It is a New Jersey state-chartered commercial banking corporation and conducts substantial business within this District.

11. Upon information and belief, Defendant BlueVine Capital Inc. ("BlueVine") is a Delaware corporation that operates a fintech startup. BlueVine provides financing for small businesses such as lines of credit, term loans, and invoice factoring services. Upon information and belief, BlueVine is headquartered in Redwood City, California and conducts substantial business within this District.

12. Upon information and belief, Defendants Doe Lenders 1 to 4,975 are responsible for the damages and unfair business practices and violations of rights as described in this Complaint. Plaintiff will amend this Complaint to state the true names, identities, or capacities of such fictitiously-named Defendants when ascertained.

## JURISDICTION AND VENUE

13. The Court has original jurisdiction over this Action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class action in which: (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of

more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

14. This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in Illinois.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff applied on behalf of its clients for PPP loans while in this District, and Defendants marketed, promoted, and took applications for PPP loans in this District.

## FACTUAL ALLEGATIONS

**Background**

16. On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus known as COVID-19.

17. On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

18. On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

19. On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

20. The Administration expressly recognized that with the COVID-19 emergency "many small businesses nationwide are experiencing economic hardship as a direct result of the

Federal, State and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

21. On March 20, 2020, Illinois Governor Jay Robert Pritzker issued an executive Stay at Home Order for the State to prevent the spread of COVID-19.

22. On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES" Act). The CARES Act (P.L. 116-136) was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and its Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses nationwide.

23. As part of the CARES Act, the Federal Government created a $349 billion loan program referred to as the "Paycheck Protection Program" ("PPP") for small businesses providing funds for loans to be originated from February 15, 2020 through June 30, 2020. The PPP was created to provide American small businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payrolls. The loans are backed by the SBA. The loans are administered by Treasury, backed by the Federal Government, but funded by private lenders ("Lenders"), including banks and financial services firms.

24. Treasury announced on April 3, 2020 that small businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through approved SBA

5

Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.

25. On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added an additional $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

26. Treasury's PPP Information Sheet Lenders (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations") provides that Lenders will be compensated for processing fees based on the balance of the financing at the time of final disbursement. Specifically, the SBA will pay Lenders fees for processing PPP loans in the following amounts:

    a. Five (5%) percent for loans of not more than $350,000;

    b. Three (3%) percent for loans of more than $350,000 and less than $2,000,000; and

    c. One (1%) percent for loans of at least $2,000,000.

27. The SBA Regulations not only include compensation for Lenders, but also for agents. Under the PPP ISL, "[a]n 'Agent' is an authorized representative and can be:

    a. An attorney;

    b. An accountant;

    c. A consultant;

    d. Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

    e. Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

      f.   A loan broker; or

      g.   Any other individual or entity representing an applicant by conducting business with the SBA."

28.    Additionally, the SBA Regulations provide that "Agent fees will be paid out of lender fees. <u>The lender will pay the agent</u>. Agents may not collect any fees from the applicant. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan" is as follows:

      a.   "One (1) percent for loans of not more than $350,000;

      b.   0.50 percent for loans of more than $350,000 and less than $2 million; and

      c.   0.25 percent for loans of at least $2 million." (Emphasis Added).

29.    The SBA Regulations establish limits on agent fees. The SBA Regulations and Treasury Guidance determined that the agent fee limits set forth above are reasonable given the application requirements and the fees that Lenders receive for making PPP loans.

30.    Within this context, Defendants served as the intermediary between small businesses and federal funds. Plaintiff served as the Agent for the small businesses applying for the PPP loans to be lent by the Defendants and backed by the Federal Government.

31.    Based on information and belief, Defendants received approval from the SBA and funded loans for numerous businesses, yet failed to pay the required compensation to Plaintiff (the "Agent") that facilitated the loan process between Lenders and applicant as required by the SBA Regulations.

32.    Defendants have either failed and refused to pay, or are willing to pay only a partial percentage of the monies owed to Plaintiff.

33. As calculated in Exhibit "A" hereto, Plaintiff, on behalf of itself and the proposed Class (as defined below), seeks $3,848,597,082.00 to be set aside pro-rata by the Defendants for distribution to a designee of the borrowers of the respective PPP loans.

**Plaintiff Assists its Clients With Applying for PPP Loans Under the CARES ACT**

34. On or about March 25, 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that the COVID-19 crisis would seriously impact its clients' businesses, sought to obtain PPP loans through various Lenders on behalf of its clients.

35. Plaintiff spent between 50-100 hours familiarizing itself with the Act, and the related SBA Regulations, and in particular, (a) Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP and (b) Section 1106 of the Act which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

36. In or about April 2020, Plaintiff assisted its clients in the gathering and analysis of their documents, as well as the calculation and preparation of their loan applications.

37. Based on the SBA Regulations, Plaintiff understood that it was not allowed to charge its clients a fee relating to the application process and that the only compensation it would receive was from the mandated Agent fees paid out of the lending institution's fees received from the Federal Government for originating the loan.

38. Plaintiff spent between two (2) and ten (10) hours on each application, depending on the complexity of the client and the amount of available data.

39. To prepare the application documentation, Plaintiff assisted clients in gathering the required information and preparing the Applications, including the following, where applicable or necessary, and for each 20% or greater owner of the borrower:

    a. Loan Calculator Spreadsheet;

8

b. SBA Form 2483;

c. Addendum A: Affiliates;

d. Information if the applicant received an SBA Economic Injury Disaster Loan ("EIDL");

e. Certificate of Beneficial Ownership Interest;

f. Driver's Licenses;

g. Articles of Incorporation or Articles of Organization;

h. 2019 IRS/State Payroll Forms;

i. 2019 Payroll Summary Report by each Employee;

j. 2019 Health Insurance Premium Paid, including each monthly statement or year-end summary;

k. 2019 Retirement Matching Plan Paid, including each monthly statement or year-end summary;

l. 2020 1st QTR 941 Form;

m. January 2020 Payroll Summary by Employee;

n. February 2020 Payroll Summary by Employee;

o. March 2020 Payroll Summary by Employee;

p. Health Insurance Premium Paid – January, February, and March 2020;

q. Retirement Matching Plan Paid – January, February, and March 2020;

r. Wiring Instruction; and

s. Copy of the Borrower's most recent bank statement,

(collectively, (a) – (s) above are part of the Application).

40. In most instances, the Application had to be amended or redone at least once as the SBA or the Lenders changed the forms, and added new documentation and addendum requirements,. Plaintiff spent additional hours making the required changes, and in some cases resubmitted the entire Application to the Lenders because Defendants required Plaintiff to do so.

41. Plaintiff believed in good faith that it would receive the Agent fees from the Lenders upon funding of each of its clients' loans under the PPP as required by the SBA Regulations.

42. Upon information and belief, Defendants did not comply with the SBA Regulations in distributing PPP funds. Instead, Defendants either retained all of the Agent Fees, or informed Agents that they would be paid only fifty (50) percent of the mandated fees. As a result of Defendants' unlawful actions, Plaintiff has suffered financial harm by being deprived of the statutorily mandated compensation for the professional services that it provided in connection to assisting its clients in applying for and obtaining PPP loans.

**Class Action Certification**

43. As noted above, Plaintiff brings this action on behalf of itself and all others similarly-situated as a state and nationwide Class, defined below.

44. Plaintiff seeks to represent a Class composed of and defined as follows:

   a. All Agents as that term is defined by the SBA Regulations that facilitated small businesses to receive a loan under the PPP, i.e., met the criteria for eligibility and were not otherwise ineligible, between February 15, 2020 and June 30, 2020, who timely applied for a PPP loan through various Lenders and were processed and approved for funding.

   b. An "Agent" as defined by the SBA Regulations is as follows:

      i. an attorney,

      ii. an accountant,

      iii. a consultant,

      iv. someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant,

      v. someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans,

      vi. a loan broker, or

      vii. any other individual or entity representing an applicant by conducting business with the SBA.

45. Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

46. *Numerosity:* The Class is composed of thousands of Agents (the "Class Members") whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

47. *Commonality:* There is a commonality in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

    a. Did Defendants comply with all applicable SBA Regulations in processing Applications for PPP funds and in distributing PPP funds?

    b. Did Defendants comply with their legal obligations under the terms of the CARES Act as a lender of the PPP funds?

    c. Did Defendants have a policy and/or practice of failing to compensate Agents who facilitated PPP loans to the detriment of the Class?

    d. Did Defendants prioritize their own origination fees over abiding by the

       CARES Act and PPP specifications?

  e. Did Defendants' conduct constitute an "unfair business practice" under Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*?

  f. Did Defendants possess exclusive knowledge of material facts, with respect to the Application process, i.e., that the Agents would not receive compensation when assisting applicants with PPP loan process?

  g. Did Defendants actively conceal a material fact or facts from the Plaintiff, i.e., that the Agent was not going to receive its earned fees from assisting with the Applications?

  h. Whether Defendants' conduct, as alleged herein, was intentional and knowing?

  i. Whether Class Members are entitled to damages and/or restitution; and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein?

  j. Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agent their earned fees under the CARES Act; and

  k. Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit.

48.   *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained herein on an individual basis. Absent a class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the fruits of their misdeeds.

49. *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiff and the Class Members have all been deceived by Defendants' unfair and unlawful PPP loan application and funding practices, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions are described herein.

50. *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interest of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interest of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel have any interest adverse to other Class Members.

51. *Ascertainability*: Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan application systems and Federally mandated record keeping practices. Defendants have one or more databases through which all of the borrowers may be identified and ascertained, and it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the Agent for the borrower) can be determined, and thereafter, notice of this action can be disseminated in accordance with due processes requirements.

## COUNT I
### (DECLARATORY RELIEF)

52. Plaintiff incorporates by reference the forgoing allegations as if the same were fully alleged herein.

53. Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents, as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and

compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA.

54. Plaintiff assisted its clients with the application process. Defendants failed to pay Agent fees owed to Plaintiff as required by SBA Regulations and instead kept all of the origination and processing fees for themselves, in direct violation of the SBA Regulations.

55. An actual controversy has arisen between Plaintiff and Defendants as to the Agent fees owed to Plaintiff by Defendants, and, upon information and belief, Defendants either deny that any Agent fees are owed to Plaintiff, or claim that only a percentage of the Agent fees are owed.

56. Plaintiff and the Class Members seek a declaration in accordance with SBA Regulations that approximately 19.14% of all administrative fees paid to all Defendants should be deposited into a mutually-agreeable fund or funds within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan. The calculations in support of this 19.14% are shown in Exhibit "A" hereto.

### COUNT II
### (VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT/ 815 ILCS 505)

57. Plaintiff incorporates by reference the forgoing allegations as if the same were fully alleged herein.

58. Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents, as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing

liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA.

59. In order to constitute an unfair practice under the Illinois Consumer Fraud and Deceptive Business Practices Act (hereinafter "ICFDBA"), the practice must either offend public policy; be immoral, unethical, oppressive, or unscrupulous; or cause substantial injury to consumers.

60. Defendants have violated the ICFDBA by engaging in unfair practices by circumventing and ignoring their obligations to comply with the Agent fee payment requirements under the SBA Regulations.

61. Defendants engaged in lending to businesses under the PPPEA and thus were required to abide by obligations set forth in the SBA Regulations.

62. Plaintiff as well as all Class Members engaged in helping clients apply for PPP loans with the understanding, consistent with the SBA Regulations, that while they were not permitted to charge their clients fees for their professional services in assisting in compiling the Applications, they would be able to obtain as compensation the mandated Agent Fees from the Lenders.

63. Defendants are well aware, or should have been well aware, of the mandated Agent Fees owed to Agent under the SBA Regulations.

64. Defendants' unfair practices occurred during the course of the Application process when Plaintiff rendered services to its clients in anticipation of being paid the mandated Agent Fees by the Lenders, only to be denied all or a portion of the Agent Fees owed under the SBA Regulations.

65. Defendants' unfair practices of refusing to pay the mandated Agent Fees and their failure to adhere to the SBA Regulations as to PPP loans are the proximate cause of Plaintiff's damages.

66. These acts and practices are unfair because Defendants withheld monies owed to Plaintiff that were clearly provided for pursuant to the SBA Regulations.

67. By committing the acts and practices alleged above, Defendants engaged in unfair business practices within the meaning of the ICFDBA.

68. Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if such an order is not granted.

69. Through their unfair acts and practices, Defendants have improperly obtained money from the Federal Government at the expense of Plaintiff and the Class.

As such, Plaintiff requests that this Court cause Defendants to disgorge this money to Plaintiff and all Class Members, enjoin Defendants from continuing to violate the ICFDBA as discussed herein, and award Plaintiff such other damages and relief this Court deems just and proper.

## COUNT III
## (UNJUST ENRICHMENT)

70. Plaintiff incorporates by reference the forgoing allegations as if the same were fully alleged herein.

71. Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents as defined by the SBA as follows: (i) an attorney; (ii) an accountant; (iii) a consultant; (iv) someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant; (v) someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans; (vi) a loan broker; or (vii) any other individual or entity representing an applicant by conducting business with the SBA.

72. Defendants have been, and continue to be, unjustly enriched, to the detriment and at the expense of the Class Members as a result of Defendants' wrongful withholding of Agent fees owed to Plaintiff and the Class.

73. Defendants have unjustly benefitted through the unlawful and wrongful collection of money from the Federal Government through the SBA funding PPP loan applications and continue to benefit to the detriment and at the expense of Plaintiff and Class Members.

74. Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff and the Class Members.

75. Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, and seeks restitution for the benefit of the Plaintiff and Class Members, in a manner to be determined by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. For an Order certifying the Class as defined above, appointing Plaintiff as Class representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;

B. For an Order declaring Defendants' actions to be unlawful;

C. For a declaration in accordance with SBA guidance that approximately 19.14% of all administrative fees paid to all Defendants should be deposited into a mutually agreeable fund or funds within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan;

D. For equitable relief to Plaintiff and Class Members;

E. For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and Class Members, and equitable relief including disgorgement, unjust enrichment, and all other available relief under applicable law;

F. For an award of punitive damages pursuant to applicable law, including, but not limited to, the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFDBA), 815 ILCS 505/10a;

G. For reasonable attorneys' fees and expenses as permitted by applicable statutes and law, including, but not limited to, the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFDBA), 815 ILCS 505/10a;

H. For costs related to bringing this action;

I. For pre and post-judgment interest as allowed by law; and

J. Such further relief at law or in equity that this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable under Federal Rule of Civil Procedure 38(a).

Dated: April 30, 2020

**ZUMPANO PATRICIOS & BRESNAHAN, LLC**

*/s/ Art Bresnahan*
Art Bresnahan, Esq.
Illinois Bar No. 6224557
829 N Milwaukee Avenue
Chicago, IL 60642
Telephone: (312) 924-3609
Facsimile: (312) 268-7179

**ZUMPANO PATRICIOS & POPOK, PLLC**

Michael S. Popok, Esq.
Mitchell G. Mandell, Esq.
Hamutal G. Lieberman, Esq.
417 Fifth Avenue, Suite 826
New York, NY 10016
Telephone: (212) 381-9999
Facsimile: (212) 320-0332
*Pro Hac Vice Application in Process*

**GERAGOS & GERAGOS, PC**

Mark Geragos, Esq.
Ben Meiselas, Esq.
Matt Hoesly, Esq.
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 625-3900
Fascimile: (213) 232-3255
*Pro Hac Vice Application in Process*

**DHILLON LAW GROUP INC.**

Harmeet K. Dhillon, Esq.
Nitoj P. Singh, Esq.
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Fascimile: (415) 520-6593
*Pro Hac Vice Application in Process*

**GRAYLAW GROUP, INC.**

Michael E. Adler, Esq.
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Fascimile: (818) 532-2834
*Pro Hac Vice Application in Process*

*Attorneys for Plaintiff and the Proposed Class*