## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| A.D. SIMS, LLC, an Illinois limited liability company on behalf of a class of similarly situated businesses and individuals,<br><br>Plaintiff,<br><br>VS.<br><br>WINTRUST FINANCIAL CORPORATION, WINTRUST BANK N.A; BANK OF AMERICA CO., BANK OF AMERICA N.A.; RETAIL CAPITAL LLC DBA CREDIBLY; MODERN BANK MANAGEMENT, LLC, MODERN BANK N.A.; CRB GROUP INC., CROSS RIVER BANK, INC.; BLUEVINE CAPITAL, INC. and; DOE LENDERS 1 to 4,975, inclusive,<br><br>Defendants. | **No. 1:20-cv-02644**<br><br>**Honorable Edmond E. Chang** |

### FIRST AMENDED CLASS ACTION COMPLAINT
### AND DEMAND FOR JURY TRIAL

Plaintiff A.D. Sims, LLC, an Illinois limited liability company ("Plaintiff"), brings its First Amended Class Action Complaint ("First Amended Complaint") on behalf of itself and a class of similarly situated agents against defendants Wintrust Bank, N.A, Bank of America, Co., Bank of America, N.A., Modern Bank Management, LLC, Modern Bank, N.A., and Cross River Bank, Inc. (collectively, the "Defendants")[1] to obtain fees owed to Plaintiff -- a minority-owned, small business financial advisory firm -- as a result of its work as an agent ("Agent") to assist other

---

[1] Defendants Retail Capital LLC d/b/a Credibly, BlueVine Capital, Inc., CRB Group, Inc., and Wintrust Financial Corporation have been voluntarily dismissed from this action without prejudice. Docket Nos. 26 and 36.

small- and medium-sized business borrowers ("Borrowers") in obtaining federally guaranteed loans through the Paycheck Protection Program ("PPP"), a Federal bail-out program implemented to provide businesses with loans to combat the economic impact of COVID-19. Federal regulations require Defendants to pay Plaintiff and the proposed Class for their work as Agents under the PPP. The Agents were retained not by the Defendants, but directly by the Borrowers to serve as their representatives in the process and help them obtain the PPP loans. Despite Federal regulations requiring that agent fees ("Agent Fees") be paid to Plaintiff for its work, Defendants have failed to pay Plaintiff and the Class Members. Instead, Defendants have kept the program Agent Fees for themselves. Plaintiff alleges the following based upon its knowledge and upon information and belief, including investigations conducted by its attorneys.

## PARTIES

1.     Plaintiff A.D. Sims, LLC ("A.D. Sims") is a limited liability company existing and operating in good standing under the laws of the State of Illinois, with its principal place of business located in Cook County, Illinois. A.D. Sims is a minority-owned small business financial advisory firm focused on other small- and medium-sized companies and entrepreneurs in the Greater Illinois area. The sole member of AD Sims is Aaron Sims, currently a resident of the State of North Carolina.

2.     Upon information and belief, Defendant Wintrust Bank, N.A. ("WB") is a federally-chartered banking institution, with its principal place of business located in Chicago, Illinois. WB is a citizen of the State of Illinois. Upon information and belief, WB conducts substantial business within the District. Plaintiff acted in the statutorily-defined role of an Agent in securing a PPP loan for one (1) Borrower of WB in the approximate amount of $66,000.00. WB's Borrower's PPP loan was funded, and WB has been paid its lender fees ("Lender Fees") by

2

the Federal Government under the same PPP, which by definition include Plaintiff's Agent Fees. Yet, having taken custody of the Agent Fees owed to Plaintiff paid to it by the Federal Government, WB has failed to pay Plaintiff the statutorily-required fees that Plaintiff is owed.

3.     Upon information and belief, Defendant Bank of America, N.A. ("BofA") is a federally-chartered banking institution, with its principal place of business located in Charlotte, North Carolina.  BofA is a citizen of the State of North Carolina.  Upon information and belief, BofA conducts substantial business within the District.  Plaintiff acted in the statutorily-defined role of an Agent in securing a PPP loan for one (1) Borrower of BofA in the approximate amount of $19,735.  BofA's Borrower's PPP loan was funded, and it has been paid its Lender Fees by the Federal Government under the same PPP, which by definition include Plaintiff's Agent Fees.  Yet, having taken custody of the Agent Fees owed to Plaintiff paid to it by the Federal Government, BofA has failed to pay Plaintiff the statutorily-required fees that Plaintiff is owed.

4.     Upon information and belief, Defendant Bank of America, Co. ("BofA Co.") is a Delaware corporation and parent company of Bank of America, N.A., with its principal place of business located in Charlotte, North Carolina.  BofA Co is a citizen of both Delaware and North Carolina.  Upon information and belief, through its subsidiaries, BofA Co. conducts substantial business within the District.

5.     Upon information and belief, Defendant Modern Bank N.A. ("MB") is a federally-chartered banking institution, with its principal place of business in New York, New York.  MB is a citizen of the State of New York.  Upon information and belief, MB conducts substantial business within the District.  Plaintiff acted in the statutorily-defined role of an Agent in securing a PPP loan for one (1) Borrower of MB in the approximate amount of $400,000.  MB's Borrower's PPP loan was funded, and it has been paid its Lender Fees by the Federal Government under the same

PPP, which by definition include Plaintiff's Agent Fees. Yet, having taken custody of the Agent Fees owed to Plaintiff paid to it by the Federal Government, MB has failed to pay Plaintiff the statutorily-required fees that Plaintiff is owed.

6.     Upon information and belief, Defendant Modern Bank Management, LLC ("MBM") is a Delaware limited liability company and parent company of Modern Bank, N.A., with its principal place of business located in New York, New York. Upon information and belief, the sole member of MBM is Bibby M. Siegal, a citizen of the State of New York. MBM is a citizen of the State of New York. Upon information and belief, through its subsidiary, MBM conducts substantial business within the District.

7.     Upon information and belief, Defendant Cross River Bank, Inc. ("CRB") is a New Jersey state-chartered banking institution, with its principal place of business located in Fort Lee, New Jersey. CRB is a citizen of the State of New Jersey. Upon information and belief, CRB conducts substantial business within the District. Plaintiff acted in the statutorily-defined role of an Agent in securing a PPP loan for one (1) Borrower of CRB in the approximate amount of $240,000. CRB's Borrower's PPP loan was funded, and it has been paid its Lender Fees by the Federal Government under the same PPP, which by definition include Plaintiff's Agent Fees. Yet, having taken custody of the Agent Fees owed to Plaintiff paid to it by the Federal Government, CRB has failed to pay Plaintiff the statutorily-required fees that Plaintiff is owed.

8.     In this Complaint, when reference is made to any act of any Defendant, such reference shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed or omitted to adequately supervise or properly control or direct their employees while engaged in the

management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this lawsuit is a proposed nationwide class action in which: (1) at least some members of the proposed class ("Class") have different citizenship than Defendant(s); (2) the proposed Class consists of more than 100 persons or entities; and (3) the claims of the Class exceed $5,000,000.00 in the aggregate.

10.      This Court also has original jurisdiction over this action under 28 U.S.C. § 1331 because the action arises under the laws of the United States, including the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136), and the SBA Regulations (as defined below).

11.      This Court has personal jurisdiction over Defendants because Defendants are residents of Illinois, do business in this District, and/or a substantial number of the events giving rise to the claims alleged herein took place in Illinois.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiff applied on behalf of its clients for PPP loans, and/or introduced its clients to the Defendants to obtain PPP loans while in this District, and Defendants marketed, promoted, and took applications for, and/or funded, PPP loans in this District.

## FACTUAL ALLEGATIONS

**Background**

13.     On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus known as COVID-19.

14.     On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

15.     On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

16.     On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States that declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

17.     On March 25, 2020[2], in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act (the "Act").  The Act (P.L. 116-136) was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020.

18.     The Act, the largest economic stimulus and rescue package in United States history, included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and the Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses nationwide.

---

[2] Five days earlier, on March 20, 2020, Illinois Governor Jay Robert Pritzker issued an executive Stay at Home Order for the State to prevent the spread of COVID-19.

**The PPP: A Program Description**

19. As part of the Act, the Federal Government created the $349 billion PPP, providing loans to small- and medium-sized businesses of less than 500 employees. The PPP was created to provide businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payrolls. The loans are backed by the SBA, administered by Treasury, and funded through private lenders, including banks and financial services firms ("Lenders") such as Defendants. Pursuant to the SBA PPP Interim Final Rule codified at 13 CFR Part 120 (the "SBA PPP Interim Final Rule"), the PPP is a limited funding program as funds are provided on a "first-come, first-served basis." *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20813 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

20. Congress elected to use the SBA to distribute the PPP funds rather than create a new federal agency with new attendant federal bureaucracy in order to best ensure that borrowers in need of the bail-out monies would be rapidly connected to the Federal funds. The velocity by which the PPP money would find its way into the hands of the borrowers, to which the Agents substantially contributed, was considered to be of paramount importance to save Main Street America.

21. Treasury announced on April 3, 2020 that small- and medium-sized businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through approved PPP Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[3]

---

[3] *See Paycheck Protection Program (PPP) Information Sheet: Borrowers,* Dep't of Treasury (last visited July 6, 2020), *https*://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf.

7

22. In its April 15, 2020 PPP Interim Final Rule, the SBA expressly recognized that, "with the COVID-19 emergency, many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus."[4]

23. On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added an additional $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

**The SBA Regulations Supersede the SBA 7(a) Regulations as to Agents and Fee-Entitlement**

24. Treasury's PPP Information Sheet (Lenders) (the "PPP ISL"), consistent with the SBA PPP Interim Final Rule (collectively, the "SBA Regulations"), creates a rapid-lending system with three (3) participants:

    a. a Lender who funds the PPP loans backed by the Federal Government;

    b. a small- or medium-sized "Main Street" Borrower who obtains the PPP loan for the specified purpose; and

    c. an independent Agent of the Borrower, often a small- or medium-sized business itself, that is a local financial advisory firm, accountant, business consultant, payroll service, bookkeeper, attorney, or employee of the applicant (the "Applicant"), who is often closest to the small- and medium-sized local businesses, many of whom do not have their own banking relationships, who brings the Borrower to the Lenders and helps shepherd the Borrower through the PPP loan process.

---

[4] *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,816 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

25.     It is through the Agent as the Borrower's representative that the PPP ensures the rapid and efficient allocation of a limited pool of dollars under its "first-come, first-served" approach.  Without the valuable assistance of their Agents, the Borrowers, many of whom are unsophisticated in the banking and lending arena, would be shut out of obtaining PPP funds, undermining the essence of the PPP as designed by Congress.  In fact, the original tranche of PPP funding was exhausted in about two (2) weeks after the program opened.

26.     Under the same SBA Regulations, both the Lenders and Agents are paid mandatory fees under the PPP for their respective work to incentivize both to participate in the PPP and rapidly connect Borrowers to their cash infusion.

27.     Notably, before the passage of the Act, Lenders and Agents were not compensated by the SBA for originating traditional SBA 7(a) loans.  That is why the Act authorized the Treasury to establish Agent Fees and their limits.  The Treasury, "in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans."[5]

28.     In other words, when implementing the Act, the Treasury determined that the best and quickest way to get the PPP loans to the small business Borrowers was to supersede many of the existing 7(a) loan requirements and establish new regulations where Lenders and Agents work together to quickly and efficiently process Applications for funding and Borrowers would be connected to Lenders to obtain the loans.  To incentivize this relationship, the Lender and Agent are to split the Federal Government fees with approximately 80% to be retained by the Lender, and 20% to be forwarded to the Agent by the Lender from its Lender Fees received.

---

[5] SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,816.

29.     The SBA Regulations define Agent[6] under the PPP to broadly include:

    a.  "An attorney;

    b.  <u>An accountant</u>;

    c.  A consultant;

    d.  <u>Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant</u>;

    e.  Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

    f.  A loan broker; or

    g.  Any other individual or entity representing an applicant by conducting business with the SBA."[7] (Emphasis added).

30.     The Agent, as defined by the SBA, is not the Lender's agent, it is the Borrower's. Nowhere in the Act or the SBA Regulations does the Federal Government require or mandate that

---

[6] Separately, the SBA for other purposes similarly defines an "agent" in 13 CFR Section 103.1(a) to also include "an authorized representative, including attorney, accountant, consultant, packager, . . . or any other individual or entity representing an [a]pplicant . . . For purposes of SBA's business loan programs, the term Agent includes but is not limited to: . . . (2) Packager: An Agent who prepares the Applicant's application for financial assistance and is employed and compensated by the Applicant . . . (3) Loan Broker: . . . an Agent who . . . assists the Applicant in finding an SBA Lender that will be willing to make a loan . . . ."

[7] *See Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited July 6, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

an Agent be "approved" by a Lender in writing[8] or otherwise before the Agent assists the Borrower, or that the Agent even be approved by the SBA at all, to entitle the Agent to its Fee for the work performed under the PPP. All that is required is that the Agent fit into one of the broad categories outlined in Paragraph 29 above and do the work in connecting the Borrower to the PPP funds. Which makes perfect sense since why would the SBA Regulations require that a Borrower's own Agent, who is likely its CPA, accountant, bookkeeper or payroll service, be approved by the Lender? The answer is that it does not, despite Defendants' insistent urging to the contrary. On the other hand, if the Lender hires an agent to help it obtain Borrowers, then it can execute and require whatever form or contract it requires.

31. There is a fundamental reason why the PPP is not a traditional 7(a) program, nor do many of the 7(a) regulations and requirements apply to the streamlined, high-octane PPP, despite the Lender's self-serving urging that each and every regulation of 7(a) must be grafted on to the PPP. It is because the SBA has expressly <u>superseded</u> the 7(a) program requirements with

---

[8] Since the initial filing of this suit, the Lenders have been working to lobby the Treasury and pressure certain members of Congress to obtain a PPP "bailout" of their own and have the rules of the road related to Agent Fees changed after the fact. Unhappy about having to share <u>any</u> of their Lender Fees with the Agents after those Agents assisted their Borrowers in the PPP process, reducing the Lender's workload in the process, the Big Banks recently had a member of Congress at a hearing "lobby" the Treasury Secretary and ask a question specifically about these lawsuits. Specifically, the Congressman asked if Agents were entitled to fees at all under the PPP and requested a new rule change in an effort to try to insulate the Lenders from these class action suits. But the Lenders' transparent lobbying efforts do not change the simple fact that the Agents such as Plaintiff reasonably relied on the SBA Regulations as they existed to work overtime to assist Borrowers to obtain the scarce bailout PPP funds in record time, thus contributing mightily to saving Main Street. Having done so, they should be paid for their work at the statutory rate from the Lender Fees regardless of any lobbying efforts or a subsequent *ex post facto* rule change. In any event, these Agents worked, not for the Lenders, but for the Borrowers. While it may make some sense that a Lender's relationship with one of its own agents would be papered by a contract, it makes absolutely no sense that a Borrower would need to obtain approval from a Lender to obtain PPP assistance from its own CPA, accountant, lawyer, payroll service or employee.

11

the new PPP requirements and where they conflict, the SBA Regulations control. *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20816 (April 15, 2020) (codified at 13 C.F.R. pt. 120) ("The program requirements of the PPP… temporarily supersede any conflicting" requirements of the traditional 7(a) loan program).

32.     Because the PPP is a completely new loan product with streamlined and different procedures and application requirements for the primary participants (Borrower, Agent and Lender), there are many fundamental differences between the traditional 7(a) SBA loans and PPP loans.  For example: (1) 7(a) does not allow the SBA to compensate Lenders (or Agents) for originating SBA loans, while the PPP mandates a Lender Fee (as defined below); (2) 7(a) requires the Lender to pay the SBA a guarantee fee, while the PPP does not; (3) 7(a) does not allow Agents to receive a contingent fee, while the PPP does; (4) 7(a) does not require that Lenders pay Agents out of the Lender Fees (because there are none), while the PPP mandates just that; (5) 7(a) requires that a certain disclosure form (Form 159) be used to address and approve Agent fees, while the PPP expressly supersedes this requirement, disclaims the use of this form, and sets up a built-in mandatory fee schedule instead; and (6) Agents and Lenders are narrowly defined under 7(a), while the PPP expands the definition of both.  *See* Comparison Between Traditional 7(a) and PPP Loans attached hereto as Exhibit "A".

33.     Additionally, under the PPP, there is no collateral required for loans which are forgivable and 100% guaranteed by the SBA.  Even the information that Borrowers need to provide is streamlined under the PPP[9] versus the 7(a) loan program[10].

---

[9] *See* https://www.sba.gov/sites/default/files/2020-04/PPP%20Borrower%20Application%20Form.pdf (last visited July 6, 2020).

[10] *See* https://www.sba.gov/sites/default/files/2018-03/SBA-1919.pdf (last visited July 6, 2020).

34.     Further, the form required by the PPP to be completed by the Borrower – the "Paycheck Protection Program Borrower Application Form" – tellingly omits the question included in the traditional SBA 7(a) loan program application (Question 10) that requires disclosure of an agent by the borrower.

**The PPP Incentivizes all 3 Participants to Rapidly Connect Funds to Borrowers and Affirms the Critical Importance of the Agent Under the PPP**

35.     Simply put, without the critical and necessary work performed by Plaintiff and the Class Members as Borrower Agents under the PPP, the Act would not accomplish Congress' expressed legislative intent: The Senate explicitly requested Treasury to "issue guidance to lenders and agents to ensure that the … loans prioritize[] small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years."[11]  (Emphasis added).

36.     The SBA Regulations also expressly provide how each of the PPP participants (Borrower, Lender, and Agent) will benefit from (and be compensated under) the program, to incentivize them to participate in the PPP and ensure the rapid distribution of the scarce federal funds.  For example, the PPP Borrower receives 100 percent (100%) of the loan amount without any deductions for fees or costs.

37.     For the Lenders, the SBA Regulations provide that they will be generously compensated Lender Fees based on the balance of the financing at the time of final disbursement. Specifically, the SBA is required to pay Lenders Fees in the following amounts for processing PPP loans:

---

[11] H.R. 748, CARES ACT, PL 116-136 (March 27, 2020; 134 Stat. 281).

  a. Five percent (5%) for loans of not more than $350,000;

  b. Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

  c. One percent (1%) for loans of at least $2,000,000.[12]

38.    In addition, the Lenders (but not the Agents) have the opportunity to earn interest on the PPP loans if they are not forgiven under the program.

39.    For the Agents, the SBA Regulations incentivize them to bring the Borrowers and their loan packages to the Lenders by expressly providing that "Agent [F]ees will be paid out of lender fees. The lender will pay the agent. Agents may not collect any fees from the applicant." (Emphasis added). "The total amount of Agent Fees that an agent may collect from the lender may not exceed:

  a. One (1) percent for loans of not more than $350,000;

  b. 0.50 percent for loans of more than $350,000 and less than $2 million; and

  c. 0.25 percent for loans of at least $2 million"[13].

40.    The SBA Regulations also reflect that the Secretary of the Treasury "determined that the [A]gent [F]ee limits . . . are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans."[14]

---

[12] *Id.*

[13] *Id.*

[14] *See* SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,816 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120).

41.     By its terms, the PPP does not allow the Lender to negotiate or "pre-approve" the amount of fees the Agent will receive under the PPP.  That is addressed in the SBA Regulations, including the portion of the Lender Fee the Agent is entitled to for bringing the Borrower and its completed application to the Lender.

42.     Based on information and belief, Defendants funded PPP loans for Borrowers represented by Plaintiff and the Class, received their Lender Fees from the Federal Government, and failed to pay the Agent Fees earned by the Plaintiff and Class out of the Lender Fees received.

43.     Despite Plaintiff's important (and successful) work in assisting Borrowers with their Applications, Defendants have failed and refused to pay the required Agent Fees to Plaintiff and the Class, and have instead retained the Agent Fee portion of the Lender Fees received from the Federal Government for themselves.

44.     Defendants often cite to their own internal policies, or lack of non-required procedures (i.e., no agreement between Defendant and Plaintiff as to Agent Fees or no Agent disclosure and unawareness of an Agent's existence), for refusing to pay the Agent Fees, or attempting to reduce the statutorily-mandated fee owed to the Agents under the PPP and consistent with Congressional intent.

45.     As a result, Plaintiff and the Class Members are not being compensated for their work, and for their valuable and necessary contribution to the PPP as intended by Congress.

**Plaintiff, in its Role as the Borrower's Agent, Assists its Clients With Applying for PPP Loans**

46.     On or about March 27, 2020, Plaintiff became aware that the Act had been signed into law.  Plaintiff, knowing that the COVID-19 crisis would severely impact its respective clients' businesses, assisted its clients with obtaining PPP loans through a specific Defendant.

47.     Plaintiff spent considerable time becoming familiar with the Act, and the related SBA Regulations, and, in particular, (a) Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and (b) Section 1106 of the Act which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

48.     In or about April 2020, Plaintiff, in its role as an Agent, assisted its respective clients, as Borrowers under the PPP, in the gathering and analysis of their documents, as well as the calculation and preparation of each loan application (the "Application(s)"), and in identifying Lenders who were processing PPP loans in the "race to the bank" environment created by the first-come, first-served nature of the PPP.

49.     Based on the SBA Regulations, Plaintiff understood that the only compensation it would receive was from the mandated Agent Fees that were advanced to the Lenders by the Federal Government for the Plaintiff's and Class Members' benefit as part of the statutory Lender Fees.

50.     To prepare the documentation, Plaintiff assisted its respective clients in gathering the required information and preparing the Applications, including the following, where applicable or necessary:

        a.  Loan Calculator Spreadsheet;

        b.  SBA Form 2483;

        c.  Addendum A: Affiliates;

        d.  Information on whether the applicant received an SBA Economic Injury Disaster Loan ("EIDL");

        e.  Certificate of Beneficial Ownership Interest;

        f.  Driver's Licenses;

    g.   Articles of Incorporation or Articles of Organization;

    h.   2019 IRS/State Payroll Forms;

    i.   2019 Payroll Summary Report by each Employee;

    j.   2019 Health Insurance Premium Paid, including each monthly statement or year-end summary;

    k.   2019 Retirement Matching Plan Paid, including each monthly statement or year-end summary;

    l.   2020 1st QTR 941 Form;

    m.   January 2020 Payroll Summary by Employee;

    n.   February 2020 Payroll Summary by Employee;

    o.   March 2020 Payroll Summary by Employee;

    p.   Health Insurance Premium Paid – January, February, and March 2020;

    q.   Retirement Matching Plan Paid – January, February, and March 2020;

    r.   Wiring Instructions; and

    s.   Copy of the Borrower's most recent bank statement,

(collectively, (a) – (s) above are part of the Application).

51.    In addition, Plaintiff worked to identify Lenders, such as Defendants, who were taking Applications and funding PPP loans in order to connect its respective Borrowers to the limited federal funds available under the PPP.

52.    Plaintiff reasonably relied on the existing SBA Regulations to expect its earned Agent Fees from the Lenders after the funding of its respective clients' PPP loan.

53.     But Defendants did not comply with the SBA Regulations in distributing the Agent Fees from their Lender Fees paid to them by the Federal Government under the PPP.

54.     Specifically, Defendants, as Lenders under the PPP and without any legal authority[15] under the SBA Regulations or otherwise, refused to pay Agents such as Plaintiff the required statutory Agent Fees from the fees they obtained from the Federal Government, or the Defendants repudiated the Agent's role and refused to pay the required Agent Fees as a general policy.

55.     As a result of Defendants' unlawful actions, Plaintiff and the Class Members have suffered financial harm by: (a) being deprived of the statutorily-mandated compensation for the professional services that they provided in connection with assisting their clients in applying for and obtaining PPP loans, and (b) being denied by Defendants just compensation for playing the vital role of Agents in the PPP process on behalf of the intended beneficiaries of the program, the small- and medium-sized business owners.

---

[15] Demonstrating further the merit of Plaintiff's claim and supporting the assertion that the Lenders have no legal authority to unilaterally refuse to pay Agent Fees (and despite their current lobbying efforts), on May 27, 2020, one of the PPP Lenders received a civil investigative demand ("CID") from the U.S. Department of Justice (the "DOJ") pursuant to the False Claims Act. The CID directed that Lender and its affiliated entities "to produce certain documents and respond to written interrogatories relating to the PPP loans approved by the Bank, the Bank's non-payment of fees to agents of borrowers and the Bank's policies related to payment or non-payment of agent fees." *See United Community Banks, Inc., Form 8-K* (last visited July 6, 2020), https://ir.ucbi.com/static-files/c7f8eaa8-d6bf-48e8-8ebc-a60c0bf3adea. United Community Banks, Inc. is a named defendant in another lawsuit based on the same allegations in the Northern District of Georgia, 1:20-cv-02026-LMM, which like this suit, is the subject of a pending application for consolidation to the Judicial Panel on Multidistrict Litigation to be heard on July 30, 2020. In addition, more than a few Lenders have agreed with Plaintiff's legal position here, and have agreed to pay the Agent Fees from their Lender Fees.

**Class Action Allegations**

56.     Plaintiff brings this action on behalf of itself and all other similarly-situated Class

members pursuant to Rules 23(b)(1), (b)(2), (b)(3) and (b)(4) of the Federal Rules of Civil

Procedure and seeks certification of the following Nationwide Class:

> All Agents who assisted a business in preparing an Application for a PPP
>
> loan pursuant to the Act (the "Nationwide Class").

57.     To the extent that a Nationwide Class is not certified, in the alternative, Plaintiff

brings this action on behalf of itself, and all other similarly situated Class members pursuant to

Rules 23(b)(1), (b)(2), (b)(3) and (b)(4) of the Federal Rules of Civil Procedure and seeks

certification of the following Statewide Class:

> All Agents who assisted a business in Illinois in preparing an Application
>
> for a PPP loan pursuant to the Act (the "Statewide Class").

The Nationwide and Statewide Class may hereafter be referred to as the "Class".

58.     For purposes of the Class definition, the term "Agent" has the same meaning as an

"agent" under the SBA Regulations and as follows:

> All Agents (as that term is defined by the SBA Regulations) that facilitated
>
> businesses in receiving a loan under the PPP, *i.e.*, met the criteria for eligibility
>
> and were not otherwise ineligible, between February 15, 2020, and June 30,
>
> 2020, who timely applied for a PPP loan through various Lenders and were
>
> processed and approved for funding, and for whom the Lenders received their
>
> Lender Fees.

59.     Plaintiff reserves the right to expand, limit, modify or amend this Class definition, including the addition of one or more subclasses in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

60.     The following are excluded from the Class and/or Subclass: (a) any Judge or Magistrate presiding over this action and members of their families; (b) the officers, directors, or employees of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

61.     *Numerosity:* The Class is composed of thousands of Agents (the "Class Members") whose joinder in this action would be impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

62.     *Commonality:* There is a commonality in questions of law and fact affecting the Class.  *See* Fed. R. Civ. P. 23(a)(2).  These questions of law and fact include, but are not limited to the following:

    a.  Whether Plaintiff is an "agent" as that term is defined by the Act and the SBA Regulations;

    b.  Whether Defendants were obligated to pay Plaintiff and the Class, Agent Fees from the Lender Fees they received under the SBA Regulations;

    c.  Did Defendants comply with all applicable SBA Regulations in processing Applications for PPP funds and in distributing PPP funds?;

    d.  Did Defendants comply with their legal obligations under the terms of the Act and the SBA Regulations as a lender of the PPP funds?;

    e.  Did Defendants by their conduct and representations lead Plaintiff to reasonably believe that it would pay the Agent Fees under the PPP for its work representing the PPP Borrowers?

    f.  Did Defendants obtain Lender Fees for closing PPP loans for Borrowers represented by Agents;

g.  Did Defendants have a policy and/or practice of failing to compensate Agents and pay them the required Agent Fees out of their Lender Fees for their work in facilitating PPP loans to the detriment of the Class?;

h.  Did Defendants prioritize their Lender Fees over abiding by the Act and the SBA Regulations?;

i.  Did Defendants' conduct in not paying the Agent Fees out of the Lender Fees they received constitute a conversion of the Agent Fees owed to the Plaintiff and the Class?;

j.  Did Defendants possess exclusive knowledge of material facts concerning the Application process, i.e., that the Agents would not receive the required compensation, i.e., Agent Fees, when assisting applicants with the PPP loan process?;

k.  Did Defendants actively conceal a material fact or facts from the Plaintiff and the Class Members that the Agent was not going to receive its earned Agent Fees when assisting with the Applications?;

l.  Whether Defendants' conduct, as alleged herein, was intentional and knowing?;

m.  Whether Plaintiff and the Class Members are entitled to damages and/or restitution, and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Plaintiff and the Class Members as a result of the conduct alleged herein?;

n.  Whether Defendants are likely to continue to mislead the public and the Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the Act?; and

o.  Whether Plaintiff and the Class Members are also entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of suit?

63.    *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members in that the claims for relief are based on the same legal principles and theories arising from the same actions and omissions of the Defendants affecting all Class Members.  *See* Fed. R. Civ. P. 23(a)(3).  Plaintiff and the Class Members have all been harmed by Defendants' unfair and unlawful PPP loan application and funding practices, as alleged herein, and all Class Members were injured in the same way by the acts and omissions of the Defendants.  The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions as described herein are defined by substantively identical provisions in the SBA Regulations under the Act. Defendants' purported defenses to the claims, both legal and factual, are typical of the defenses they would try to raise in response to the Class's claims.

64.    *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent.  *See* Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interest of the other Class Members.  Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions.  Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so.  Neither Plaintiff nor its counsel have any interest adverse to other Class Members.

65.    *Predominance*: The above questions of law and fact predominate over individual questions affecting the Class Members.  Defendants' conduct described in this Complaint all stems from ignoring their obligations under the SBA Regulations setting forth the policy and procedures for payment of Agent Fees that are readily calculable from Defendants' records and other Class-wide evidence.  Class Members do not have an interest in pursuing separate individual actions against Defendants as the amount of each Class Member's claim is relatively small compared to the expense and burden of individual prosecution.  The management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would

be desirable to concentrate the litigation of all Class Members' claims in a single action. *See* Fed. R. Civ. P. 23(b)(3).

66.     *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained of herein on an individual basis. Absent a class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the fruits of their misdeeds. Any difficulties that might occur in the management of this proposed class action are insubstantial. *See* Fed. R. Civ. P. 23(b)(1)(A).

67.     *Ascertainability*: Plaintiff are informed and believe that Defendants keep extensive electronic records of their loan Applications through, *inter alia*, computerized loan application systems, and federally-mandated record-keeping practices. Defendants have one or more database(s) through which all of the Borrowers may be identified and ascertained, and through it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the Agent for the Borrower) can be determined, and thereafter, notice of this action can be disseminated in accordance with due process requirements.

68.     Neither Plaintiff nor the Class Members have previously litigated the claims asserted in this Complaint.

## COUNT I
## DECLARATORY RELIEF

69.     Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

70.     Plaintiff asserts this cause of action on behalf of itself and other Class Members as Agents defined by the SBA Regulations.

71.     Plaintiff, as an Agent under the PPP, assisted its clients (the Borrowers) with submitting the Applications to obtain PPP loans under the Act, shepherded the Borrowers through the complexities of the PPP loan process, and/or connected the Borrower client to the Defendants, which then led to a funded PPP loan.  Defendants failed to pay Agent Fees owed to Plaintiff as required by SBA Regulations, and/or violated the SBA Regulations by refusing to recognize the existence of the Agent and its entitlement to Agent Fees, despite having been paid their own Lender Fees under the same PPP. Instead, Defendants kept all of the origination and processing fees for themselves in direct violation of the SBA Regulations.

72.     An actual controversy has arisen between Plaintiff and Defendants with respect to Plaintiff's and the Class Members' right to the Agent Fees owed by Defendants, and Defendants deny that any Agent Fees are owed to Plaintiff.  Plaintiff and the Class Members have a legally protectable interest under the SBA Regulations in that they are entitled to their mandated Agent Fees in connection with the professional services rendered to their clients in preparing and submitting Applications for PPP funds.

73.     Cavalierly ignoring the clear and unequivocal Agent Fee mandate in the PPP and SBA Regulations, as well as the procedures and application requirements expressly created by Congress to be distinct from pre-PPP SBA 7(a) loan requirements, all of which have been acknowledged by other Lenders, Defendants have skirted their statutory obligations under the irrelevant premise that Plaintiff did not have any agreement with Defendants for Agent Fees, nor did Plaintiff disclose itself as an Agent, and thus Defendants purportedly were not aware of Plaintiff's existence.

74.     Plaintiff rejects Defendants' erroneous interpretation of the PPP (at odds even with other Lenders' positions) and contends that it is entitled to the Agent Fees for the work it performed under the PPP and in accordance with SBA Regulations, which supersede the traditional SBA 7(a) loan requirements and procedures, and specifically require fees to be paid to the Agents out of the Lender Fees received for each loan they process. Indeed, Defendants, as Lenders, know or should know about the Act and the SBA Regulations (and all guidance concerning the PPP), which informed them of the mandated Agent Fees. For these Lenders to feign ignorance of the SBA Regulations or urge an unreasonable interpretation and construction of the SBA Regulations and the Act that Agents are only entitled to be paid for their work with Borrowers if and only if the Lenders approve of their arrangement first in order to deny paying the Agent Fees is in bad faith.

75.     Defendants have failed and refused, and continue to fail and refuse, to pay the mandated Agent Fees to Plaintiff and the Class Members as required under the SBA Regulations.

76.     Plaintiff and the Class Members seek a declaration, in accordance with the SBA Regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants are required under the SBA Regulations to pay the Agent Fees at the statutory amount on each loan funded involving an Agent, out of the Lender Fees they received under the very same PPP from the Federal Government.

## COUNT II
## VIOLATIONS OF THE CARES ACT

77.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

78.     The Act provides a stimulus package in response to the COVID-19 pandemic and includes the PPP, which provides unprecedented financial assistance to small- and medium-sized businesses to prevent them from going under.

25

79.     There is an implied cause of action arising under the Act, as: (i) Plaintiff is a member of the class for whose benefit the Act was enacted; (ii) it was Congress' intent to create a remedy for Plaintiff under the Act; (iii) it is consistent with the underlying purposes of the Act to imply such a remedy; and (iv) Plaintiff's cause of action is not traditionally relegated to state law, nor is it in an area that is traditionally the concern of the States.

80.     The Act, along with the SBA Regulations, provides for the payment of Agent Fees to authorized representatives who assisted PPP loan applicants with their PPP Applications (*i.e.*, PPP Agents consisting of Plaintiff and the Class Members).

81.     In disregard for the law, Defendants have failed and/or refused to pay the Agent Fees to the Borrowers' authorized representatives (*i.e.*, PPP Agents consisting of Plaintiff and the Class Members), and instead kept the fees to enrich themselves.

82.     Plaintiffs and Class Members are PPP Agents under the Act and the SBA Regulations and, therefore, are entitled to the Agent Fees they have earned. The Agent Fees have been paid to the Lenders by the Federal Government and are to be paid by the Lenders to the Plaintiffs and Class Members as set forth in the Act and the SBA Regulations.

83.     Nevertheless, Defendants refused to pay Plaintiffs and the Class Members the authorized Agent Fees.

84.     As a direct and proximate result of Defendants' failure and/or refusal to comply with the Act and the SBA Regulations, Plaintiffs and the Class Members have suffered damages in excess of $5 million.

## COUNT III
## VIOLATIONS OF THE SBA's 7(a) LOAN
## PROGRAM, 15 U.S.C. § 636(a)

85.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

86.     In order to rapidly connect limited PPP funds to Borrowers in desperate need of a cash-infusion following the COVID19 pandemic and State-ordered business closings and quarantines, the Treasury, rather than creating a new federal bureaucracy, instead designated the SBA to administer the PPP.

87.     The SBA in turn elected to expand its existing 7(a) loan program to include the PPP, but expressly superseded many of the rules and regulations of 7(a) and replaced them with a substantially streamlined set of PPP requirements, the above-referenced SBA Regulations.

88.     There is an implied cause of action arising under the SBA's 7(a) loan program, as applied through the Act, as: (i) Plaintiff is a member of the class for whose benefit the Act was enacted; (ii) it was Congress' intent to create a remedy for Plaintiff under the Act; (iii) it is consistent with the underlying purposes of the Act to imply such a remedy; and (iv) Plaintiff's cause of action is not traditionally relegated to state law, nor is it in an area that is traditionally the concern of the States.

89.     The SBA Regulations provide for the payment of Agent Fees to authorized representatives that assisted PPP Borrowers with their PPP Applications (*i.e.*, PPP Agents consisting of the Plaintiff and the Class Members).

90.     In disregard for the law, Defendants have failed and/or refused to pay Agent Fees to Plaintiffs and the Class Members, and instead have kept the fees to enrich themselves. By contrast, other Lenders have agreed

27

with Agents such as Plaintiff and have agreed to pay the Agent Fees from their Lender Fees paid as part of the PPP.

91.     Further, Defendants by their conduct, including participating as a PPP Lender, are bound to comply with the SBA Regulations as agents of the Federal Government, and to pay the Agent Fees out of the Lender Fees received under the PPP.  Defendants, by their conduct, also led Plaintiff and the Class Members to reasonably believe that they would be paid for their services as the Borrowers' Agents.

92.     As a direct and proximate result of Defendants' wrongful actions, Plaintiffs and the Class Members have suffered damages in excess of $5 million.

**COUNT IV**
**CONVERSION**

93.     Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

94.     Under the SBA Regulations, Plaintiff and the other Class Members have an immediate right to the mandatory and identifiable Agent Fees owed to them to be paid from the Lender Fees provided to Defendants for lending money pursuant to the approved Applications.

95.     Under the PPP, the Agent cannot look to the Treasury or to the Borrowers for direct payment of their Agent Fees.  Instead, the Agent Fees are paid to the Lender as part of the Lender Fees, and the Lender is obligated to pay the Agent Fees over to the Agent.

96.     As alleged herein, the Agent Fees were paid to the Lenders as part of the Lender Fees paid to each Defendant for each Borrower's loan. The Lender Fees were placed in the Defendants' custody to be used to pay Plaintiff and the other Class Members the Agent Fees they had earned.

97.     Defendants are obligated to pay Plaintiff and other Class Members the mandatory Agent Fees according to the SBA Regulations.

98.     Defendants willfully interfered with the rights of Plaintiff and the other Class Members, without legal justification, when they misappropriated and retained the monies paid to Defendants as part of their Lender Fees, and allocated by Treasury for the Agent Fees due upon the funding of each of Plaintiff's and the other Class Members' clients' PPP loans.

99.     Defendants deprived Plaintiff and the other Class Members of the ownership, possession, and control of the Agent Fees and misappropriated them for their benefit through their unauthorized dominion over the Agent Fees.

100.    Under prevailing law, money may be the subject of a conversion claim if the money can be described, identified, or segregated, and an obligation to treat it in a specific manner is established.    That requirement is met because the Agent Fees are a segregated portion of the Lender Fees awarded through the SBA Regulations for a successfully funded PPP loan.

101.    At the time they unlawfully retained the Agent Fees, Defendants knew or should have known that the Agent Fees paid to them as part of their Lender Fees were owed to Plaintiff and the other Class Members.

102.    Defendants' conduct manifests a willful or reckless disregard of Plaintiff's and the Class Members' right of possession to the monies owed to them.

103.    Defendants' improper acts or practices of refusing to pay Plaintiff and the other Class Members the mandated Agent Fees are the proximate cause of the damages sustained by Plaintiff and the Class Members.

104.    Plaintiff and the Class Members respectfully request that this Court cause Defendants to disgorge the amount of the Agent Fees wrongfully misappropriated and converted

by Defendants to Plaintiff and all Class Members, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and all Class Members compensatory damages, punitive damages and such other damages and relief that this Court deems just and proper.

**COUNT V**
**UNJUST ENRICHMENT**
**(In the Alternative)**

105.    Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

106.    To the extent that this Court finds no violation of the Act, Plaintiff asserts this cause of action, in the alternative, on behalf of itself and other Class Members as Agents. Defendants have been, and continue to be, unjustly enriched, to the detriment and at the expense of Plaintiff and the Class Members as a result of Defendants' wrongful withholding of Agent Fees from the Lender Fees they received, and are now owed to Plaintiff and the Class Members.  Defendants have been unjustly benefitted through the unlawful and wrongful retention of monies due to the Agents (*i.e.*, the Agent Fees) as a result of the funding of the PPP loans, and Defendants' receipt of their Lender Fees under the same program.  Specifically, Plaintiff and the Class Members provided services to the Borrowers to help each Borrower obtain a PPP loan.  Defendants then retained for their benefit Agent Fees that Plaintiff and the Class Members were entitled to be paid for work performed and continue to benefit to the detriment and at the expense of Plaintiff and the Class Members.

107.    To participate in the PPP, "Lenders must comply with the applicable lender obligations set forth in this [SBA PPP Final Rule].…"[16] Despite Plaintiff's and the Class Members'

---

[16] SBA Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,812.

considerable efforts serving as PPP Agents on behalf of the Borrowers, Defendants have failed to pay the statutory-required Agent Fees in violation of the SBA Regulations.

108.    Plaintiff and the Class Members chose specific Defendants with which to place the Borrowers and the PPP Loans with the reasonable expectation of being paid as an Agent under the SBA Regulations.

109.    Defendants by their conduct, including participating as a PPP Lender, are bound to comply with the SBA Regulations as agents of the Federal Government, and to pay the Agent Fees out of the Lender Fees received under the PPP.  Defendants, by their conduct, also led Plaintiff and the Class Members to reasonably believe that they would be paid for their services as the Borrowers' Agents.

110.    Instead, Defendants have retained the full amount of the Lender Fees from which the SBA Regulations require Agent Fees to be paid.  Therefore, Defendants have unfairly retained fees intended to benefit and compensate Plaintiff and the Class Members for their efforts in promoting the interests of the Act and ensuring that small businesses receive PPP loans.

111.    By holding themselves out as PPP lenders, Defendants by their conduct requested Plaintiff and the Class Members to assist Borrowers with their PPP Applications and have the Applications submitted to Defendants for approval.

112.    Defendants have failed and refused to pay the monies owed to Plaintiff and the Class Members and are choosing to retain the Agent Fees for themselves in direct violation of SBA regulations.

113.    Plaintiff and the Class Members have no other means of obtaining compensation because the SBA Regulations prohibit PPP Agents from receiving payment from any other source other than the Lender Fees and expressly prohibit fees from the Borrowers.

114.    Defendants' conduct willfully and intentionally negates the terms of the SBA Regulations by unilaterally refusing to forward to the PPP Agents the mandated Agent Fees that the Federal Government entrusted to the Lenders. Defendants' actions render those terms superfluous and undermine the intent of Congress to promote small business loans under the PPP and Act.

115.    It is against equity and good conscience that Defendants be permitted to retain the benefits conferred upon them by Plaintiff and the Class Members.

116.    Plaintiff and the Class Members respectfully request this Court to order Defendants to disgorge the amount of the Agent Fees which Defendants wrongfully misappropriated from Plaintiff and the Class Members, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and the Class Members such other damages and relief that this Court deems just and proper.

## COUNT VI
## ESTOPPEL

117.    Plaintiff incorporates by reference the foregoing allegations as if the same were fully alleged herein.

118.    Defendants' conduct described above, including: (a) being a willing and voluntary participant in the PPP; (b) agreeing to be the steward and custodian for scarce Federal funds in the form of the funded PPP loans guaranteed by the SBA; (b) accepting the benefits of being a PPP Lender by being paid by the Treasury its Lender Fees pursuant to the SBA Regulations and being provided other incentives to be a PPP Lender; (c) having received as part of the Lender Fees that portion that belongs to Plaintiff and the Class Members as Agent Fees; (d) being aware (or that they should have been aware) that Borrowers used Agents to help them through the complexities of the PPP loan process; (e) receiving the benefit of the Agents' work in helping the Borrowers in

the PPP loan process, thus reducing their own workload; (f) allowing the Agents to work, often around the clock, to connect their clients to the PPP funds knowing that the Agents had a reasonable belief that they would be paid from the Lender Fees; and (g) knowing that the SBA Regulations prevent the Agent from being compensated by the Borrower for the PPP work performed, constitutes conduct amounting to misrepresentation or concealment of material facts under prevailing law.

119.    At the time of Defendants' conduct described herein and in Paragraph 118 above, Defendants had knowledge, actual or implied, that they had no intention of ever paying the Agents for the work they performed for the Borrowers, despite the SBA Regulations' requirements that they do so.

120.    At all relevant times, Plaintiff and the other Agents in the Class were unaware that after they performed their services on behalf the Borrowers, Defendants would try to rely on a tortured and unreasonable interpretation of the SBA Regulations to deny them Agent Fees.

121.    Plaintiff and the other Agents in the Class, knowing that they could not charge the Borrowers for the PPP work and in reliance instead on the reasonable expectation of being paid for their efforts from the Lender Fees, worked tirelessly to assist Borrowers to obtain scarce PPP funds as quickly as possible before the window to lending shut tight, putting the Borrowers out of business and their employees out on the street.

122.    Defendants were benefited by the Agents performing the valuable work of shepherding the Borrowers to the Lenders and through the complexities of the PPP, and then retaining 100 percent (100%) of the Lender Fees for the Defendants own benefit by not paying the Agents at all for the work already performed.

123.    On the other hand, Plaintiff and the Agents in the Class have suffered severe prejudice in having done the work to help the Borrowers obtain the scarce PPP funds from the Lenders without compensation from the Borrowers, and then have the Lenders deny their entitlement to the mandated PPP Agent Fees under the SBA Regulations, leaving Plaintiff and the other Agents (themselves small and medium and/or minority owned businesses) out in the cold.

124.    Plaintiff and the Class Members respectfully request this Court to order Defendants to disgorge the amount of the Agent Fees which Defendants wrongfully misappropriated from Plaintiff and the Class Members by materially misrepresenting they would be paying the Agent Fees by participating in the PPP, enjoin Defendants from continuing the improper acts as discussed herein, and award Plaintiff and the Class Members such other damages and relief that this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class Members, prays for the following relief:

A.  An Order certifying the Class as defined above, appointing Plaintiff as the Class Representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;

B.  An Order declaring Defendants' actions to be unlawful;

C.  An Order declaring that all regulatorily-mandated and calculated Agent Fees are owed to Plaintiff and the Class Members and should be deposited into a mutually agreeable fund or funds within 60 days, to be distributed to the PPP Agents who are entitled to the funds;

D.  An Order estopping Defendants from their inequitable conduct;

E.   An award of all recoverable compensatory, punitive, statutory, and other damages sustained by Plaintiff and the Class Members, as well as all injunctive or equitable relief including disgorgement and enjoining Defendants from continuing the improper acts as identified herein, and all other available relief under applicable law;

F.   Reasonable attorneys' fees and expenses as permitted by applicable statutes and law;

G.   Costs related to bringing this action;

H.   Pre and post-judgment interest as allowed by law; and

I.   Such further relief at law or in equity that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff, individually, and on behalf of the Class Members, hereby demands a trial by jury on all claims and issues so triable pursuant to Federal Rule of Civil Procedure 38(a).


Dated:  July 6, 2020                          Respectfully submitted,

                                               **ZUMPANO PATRICIOS & POPOK, PLLC**

                                               */s/ Michael S. Popok*
                                               Michael S. Popok, Esq. (*Pro Hac Vice*)
                                               Mitchell G. Mandell, Esq. (*Pro Hac Vice*)
                                             417 Fifth Avenue, Suite 826
                                             New York, NY 10016
                                             Telephone: (212) 381-9999
                                             Facsimile: (212) 320-0332

                                             and,

**ZUMPANO PATRICIOS & BRESNAHAN, LLC**
Art Bresnahan, Esq.
Illinois Bar No. 6224557
829 N Milwaukee Avenue
Chicago, IL 60642
Telephone: (312) 924-3609
Facsimile: (312) 268-7179

**GERAGOS & GERAGOS, PC**
Mark Geragos, Esq. (*Pro Hac Vice*)
Ben Meiselas, Esq. (*Pro Hac Vice*)
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255

**DHILLON LAW GROUP INC.**
Harmeet K. Dhillon, Esq. (*Pro Hac Vice*)
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

**GRAYLAW GROUP, INC.**
Michael E. Adler, Esq. (*Pro Hac Vice*)
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834

*Attorneys for Plaintiff and the Proposed Class*