**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| A.D. SIMS, LLC, on behalf of a class of similarly situated businesses and individuals,<br><br>      Plaintiff(s),<br><br>   v.<br><br>WINTRUST FINANCIAL CORPORATION; WINTRUST BANK, N.A.; BANK OF AMERICA CO.; BANK OF AMERICA N.A.; RETAIL CAPITAL LLC DBA CREDIBLY; MODERN BANK MANAGEMENT, LLC; MODERN BANK N.A.; CRB GROUP INC.; CROSS RIVER BANK; BLUEVINE CAPITAL INC.; and DOE LENDERS 1 to 4,975, inclusive,<br><br>      Defendants. | Case No. 1:20-cv-02644<br><br>Hon. Edmond E. Chang |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ............................................................................................................ 4

I.    The Small Business Administration's Section 7(a) Loan Program ..................... 4

II.   Congress Adopts the CARES Act and Creates the PPP. ...................... 5

III.  The SBA's Regulations Implementing the PPP......................................... 7

IV.  The Treasury Secretary and the AICPA Interpret the Agent Fee Rules Consistent with Defendants' Interpretation. ............................................................ 8

V.   Plaintiff Filed This Lawsuit Without Entering into *Any* Compensation Agreements With *Any* of the Defendants............................................................. 10

PROCEDURAL STANDARD ..................................................................................... 10

ARGUMENT ............................................................................................................... 11

I.    NEITHER THE CARES ACT NOR THE IFR ENTITLES AGENTS TO FEES FROM LENDERS IN THE ABSENCE OF A CONTRACT. ........................... 11

    A.   The CARES Act Does Not Require Lenders to Pay Fees to Agents. ........... 12

    B.   The CARES Act Directs the SBA to Implement the PPP Under the Section 7(a) Loan Program, Which Has Clear Rules for Agent Compensation. ....... 14

    C.   Plaintiff's Reliance on the IFR and the Information Sheet Is Misplaced...... 15

        1.  The IFR Does Not Entitle Agents to Receive Fees.................................. 16

        2.  The SBA Did Not Change Its Longstanding Agent Fee Regulations....... 19

II.   COUNTS I–III SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS A PRIVATE RIGHT OF ACTION. ...................................................................... 22

    A.   The CARES Act Does Not Grant a Private Right of Action. ...................... 22

    B.   The Lack of a Private Right of Action Defeats Plaintiff's Claims under the CARES Act, the SBA's 7(a) Loan Program, and the Declaratory Judgment Act....................................................................................................... 24

III.  PLAINTIFF'S COMMON LAW CLAIMS (COUNTS IV–VI) SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT PLEAD THEIR NECESSARY ELEMENTS............................................................................................... 24

    A.   Plaintiff's Conversion Claim Fails Because Plaintiff Cannot Plead That Any of the Lender Fees Paid by the SBA to Defendants Were Wrongfully Converted............................................................................................. 25

      B.     Plaintiff's Unjust Enrichment Claim Fails Because Plaintiff Cannot Allege That Defendants Unjustly or Wrongly Obtained a Benefit from Plaintiff When Defendants Received Lender Fees from the SBA. ........................... 26

      C.     Plaintiff's Estoppel Claim Fails Because None of the Elements of Any Estoppel Theory (Such as a Promise by Lenders, or Reliance by Plaintiff) Apply to the Facts as Alleged. ................................................................... 27

CONCLUSION ............................................................................................................ 30

## TABLE OF AUTHORITIES

### CASES

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)....................................................24

*Alarm Detection Systems, Inc. v. Orland Fire Protection District*, 929 F.3d 865 (7th Cir. 2019) ...........................................................................................................................24

*Alexander v. Sandoval*, 532 U.S. 275 (2001)........................................................22, 23

*Am. Inter-Fid. Corp. v. M.L. Sullivan Ins. Agency, Inc.*, 2016 WL 3940092 (N.D. Ill. July 21, 2016) .............................................................................................................26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................10

*Bielskis v. Louisville Ladders Inc.*, No. 07-C-1411, 2007 WL 2088583 (N.D. Ill. July 18, 2007) ...............................................................................................................11

*Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459 (7th Cir. 2005) ...........................29

*Chessie Logistics Company v. Krinos Holdings, Inc.*, 867 F.3d 852 (7th Cir. 2017)...................22

*Christensen v. Harris County*, 529 U.S. 576 (2000)......................................................18

*Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011).....................................26, 27

*Coca-Cola Co. Foods Div. v. Olmarc Packaging Co.*, 620 F. Supp. 966 (N.D. Ill. 1985) ...........29

*Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013)........................................24, 25

*Crandal v. Ball, Ball & Brosamer, Inc.*, 99 F.3d 907 (9th Cir. 1996)...........................23

*Davis v. Mich. Dept. of Treasury*, 489 U.S. 803 (1989) ...............................................14

*Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) ...........................................................2

*DHS v. MacLean*, 574 U.S. 383 (2015) ........................................................................13

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).........................................19

*Geva v. Leo Burnett Co.*, 931 F.2d 1220 (7th Cir. 1991)..............................................27

*Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809 (N.D. Ill. 2016) ...........................27, 28

*Horbach v. Kaczmarek*, 288 F.3d 969 (7th Cir. 2002) ..................................................25

*Joliet Mass Transit Dist. v. Illinois Fair Employment Practices Comm'n*, 85 Ill. App. 3d 270 (Ill. App. 2d Dist. 1980)................................................................................28

*Kannapien v. Quaker Oats Co.*, 507 F.3d 629 (7th Cir. 2007) ..................................................29

*Keene Corp. v. United States*, 508 U.S. 200 (1993) .....................................................................13

*Kennedy v. United States*, 965 F.2d 413 (7th Cir. 1992) ..............................................................28

*Lindahl v. OPM*, 470 U.S. 768 (1985) ..........................................................................................14

*Lopez v. Jet Blue Airways*, 662 F.3d 593 (2d Cir. 2011) ..............................................................22

*Lyng v. Payne*, 476 U.S. 926 (1986) .............................................................................................15

*Martis v. Grinnell Mut. Reins. Co.,* 905 N.E.2d 920 (Ill. App. 3d Dist. 2009) ............................27

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) .........................................................10

*Nat'l Am. Ins. Co. v. Indiana Lumbermens Mut. Ins. Co.*, 221 F.3d 1339 (7th Cir. 2000) ..........26

*Nielen-Thomas v. Concorde Inv. Servs., LLC*, 914 F.3d 524 (7th Cir. 2019) ...............................15

*Nisi v. Brown*, 369 F. Supp. 3d 848 (N.D. Ill. 2019) ....................................................................14

*Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753 (7th Cir. 1992) ...........................13

*Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452 (7th Cir. 2017) ................................................2

*Prestwick Capital Mgmt., Ltd. v. Peregrine Fin. Grp., Inc.*, 727 F.3d 646 (7th Cir. 2013) ....28, 29

*Profiles, Inc. v. Bank of Am. Corp.*, 2020 WL 1849710 (D. Md. Apr. 13, 2020).............22, 23, 24

*Robin Johnson d/b/a CG Johnson & Company, et al. v. JPMorgan Chase Bank, N.A., et al.*, No. 20-CV-4100 (JSR), 2020 WL 5608683 (S.D.N.Y. Sept. 21, 2020) ................... passim

*Schilling v. Rogers*, 363 U.S. 666 (1960) .....................................................................................24

*Senne v. Vill. of Palatine, Illinois*, 784 F.3d 444 (7th Cir. 2015) .................................................18

*Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011 (N.D. Ill. 2009) .........................................................25

*Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 3:20-cv-5425-TKW-HTC, 2020 WL 4882416 (N.D. Fla. Aug. 17, 2020)....................................................................... passim

*Statland v. American Airlines, Inc.*, 998 F.2d 539 (7th Cir. 1993) ...............................................22

*Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735 (7th Cir. 2016).....................................26

*Sutherland v. O'Malley*, 882 F.2d 1196 (7th Cir. 1989)...............................................................25

*United States v. Wells*, 519 U.S. 482 (1997).................................................................................12

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ..........................................................12

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) ..........................................................14, 19

*Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244 (7th Cir. 1994) ......................................2

*Yardley v. Yardley*, 484 N.E.2d 873 (Ill. App. 2d Dist. 1985)........................................................28

*Zurich Am. Ins. Co. v. MB Fin. Bank, N.A.*, 2020 IL App (1st) 190767-U ..................................27

## OTHER AUTHORITIES

13 C.F.R. § 103.1 ..............................................................................................................4, 5

13 C.F.R. § 103.2 ..........................................................................................................4, 7, 19

13 C.F.R. § 103.5 ..................................................................................................... passim

13 C.F.R. § 120.10 ..................................................................................................................20

61 Fed. Reg. 2,679, 2,682 ..........................................................................................................5

85 Fed. Reg. 7,627 ..............................................................................................................4, 19

85 Fed. Reg. 20,811–12 ..................................................................................................6, 7, 13

85 Fed. Reg. 20,816 ..........................................................................................................8, 12, 16

15 U.S.C. § 636.................................................................................................... passim

15 U.S.C. § 642 ........................................................................................................................4

15 U.S.C. § 650........................................................................................................................23

15 U.S.C. § 9005 ......................................................................................................................5

28 U.S.C. § 2201 ....................................................................................................................24

Restatement (First) of the Law of Restitution................................................................15

Restatement (Second) of the Law of Agency ...............................................................15

## INTRODUCTION

This is one of dozens of copycat cases filed nationwide by purported "agents" demanding automatic payment of agent fees from lenders that provided loans to small businesses through the federal Paycheck Protection Program ("PPP"). The PPP is part of the Small Business Administration ("SBA") Section 7(a) loan program, and was created by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 111-31 (2020), to benefit small business borrowers during the COVID-19 pandemic.

As with the other suits, this action raises a straightforward, dispositive question of law: Are purported agents who allege they assisted PPP borrowers automatically entitled to payment from lenders even though the lenders never promised or agreed to pay them? The two courts that have already addressed this issue have decisively answered "no" and dismissed the agents' claims. *Robin Johnson d/b/a CG Johnson & Company, et al. v. JPMorgan Chase Bank, N.A., et al.*, No. 20-CV-4100 (JSR), 2020 WL 5608683, at *1 (S.D.N.Y. Sept. 21, 2020) (Rakoff, *J.*) ("The Court holds that, absent an agreement between agent and lender, defendant banks are not required to pay agent fees."); *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 3:20-cv-5425-TKW-HTC, 2020 WL 4882416, at *1 (N.D. Fla. Aug. 17, 2020) (Wetherell, *J.*) ("The central issue of first impression in this case is whether Plaintiff and others like it are entitled to any portion of the fees paid . . . under the [PPP]. The short answer is no.") (quotation marks and footnote omitted).

This result is clear from the statutory text and structure, from the accompanying regulations implementing the PPP, from the longstanding SBA regulatory scheme of which the PPP is a part, and from long-settled background legal principles—including the fundamental proposition that persons may not be compelled to do business with others in the absence of an agreement or even notice of the others' existence. The Treasury Secretary also expressly confirmed that answer in recent Congressional testimony, in which he made clear that any fees

paid to agents under the PPP are "*intended to be based upon a contractual relationship between the agent and the bank*." Exhibit 1 (emphasis added).[1]

Here, the necessary contractual relationship between Plaintiff and the named defendants is lacking, as Plaintiff readily admits. Plaintiff is a financial advisory firm that allegedly assisted unnamed businesses in applying for loans through Wintrust Bank, N.A. ("Wintrust"), Bank of America, N.A. (together with Bank of America Corporation, "BofA"), Modern Bank, N.A. ("Modern Bank"), and Cross River Bank ("Cross River") (together, "Defendants")[2] under the PPP, which is administered by the SBA and the Treasury Department. Plaintiff does not allege that it complied with any of the longstanding SBA requirements for seeking agent fees "in a[] matter involving SBA assistance," 13 C.F.R. § 103.5(a), or even that it attempted to do so. For example, Plaintiff does not allege that it "execute[d] and provide[d] to SBA a compensation agreement" signed by the lender, agent, and applicant before seeking such fees, notwithstanding the regulatory requirement that it do so. *Id.* In fact, Plaintiff does not allege that Defendants knew of the work Plaintiff allegedly was doing on behalf of the applicants, or even knew of Plaintiff's existence at all.

---

[1] *See* testimony by U.S. Treasury Secretary Steven Mnuchin at the June 30, 2020 hearing before the House Committee on Financial Services, "Oversight of the Treasury Department's and Federal Reserve's Pandemic Response" (unofficial transcript) (Exhibit 1). This document may be retrieved from Bloomberg. A video recording of the hearing is available at https://www.congress.gov/event/116th-congress/house-event/110839, with the relevant exchange beginning at approximately 1:31:52 and ending at approximately 1:33:49.

All exhibits referenced are included as attachments to the motion to dismiss. A court may consider certain materials outside the complaint without converting the motion to dismiss to a motion for summary judgment. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). "Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017); *see also Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of a federal government website).

[2] On May 21, 2020, Plaintiff voluntarily dismissed defendants BlueVine Capital Inc., Retail Capital LLC d/b/a Credibly, and CRB Group, Inc. Dkt No. 26. On June 4, 2020, Plaintiff voluntarily dismissed Defendant Wintrust Financial Corporation. Dkt. No. 36. On September 24, 2020, Plaintiff voluntarily dismissed defendant Modern Bank Management, LLC. Dkt. No. 72.

Instead, Plaintiff claims that it was allowed to skip these fundamental steps because, it argues, under the PPP, a lender must pay fees to any self-proclaimed agent who declares that it assisted a borrower even in the absence of any agreement by the lender to pay the agent. In effect, Plaintiff asks this Court to sanction its effort to avoid the statutory and regulatory prerequisites that agents must satisfy before they may receive fees "in any matter involving SBA assistance." *Id.* That position is contrary to law, and this Court should reject it.

The central premise underlying all of Plaintiff's claims—that it is entitled to agent fees under the PPP simply by *claiming* to have assisted PPP loan applicants, but without a contract with the lenders to do that work, Am. Compl. ¶¶ 46–55—"finds no support" in the statute or regulations creating the PPP, as the court in the *Sport & Wheat* case forcefully concluded. 2020 WL 4882416, at *2; *see also id.* at *4 ("[I]t is undisputed that neither Plaintiff nor the borrowers executed [the required form], nor did they have agreements with Defendants regarding payment for the work Plaintiff performed in assisting borrowers in obtaining PPP loans through Defendants. Accordingly, Defendants have no legal obligation under the CARES Act or [the SBA's accompanying regulations] to pay Plaintiff an 'agent fee.'"); *Robin Johnson*, 2020 WL 5608683, at *8 (similar).

In short, the CARES Act does *not* require lenders to pay agent fees "absent an agreement to do so." *Robin Johnson*, 2020 WL 5608683, at *6. If Congress had intended to require lenders to compensate agents of PPP applicants, regardless of whether those agents were engaged by the lenders (or even were known to them), it would have said so explicitly—as it did when it *required* the SBA to pay fees to *lenders* for making PPP loans under the CARES Act. 15 U.S.C. § 636(a)(36)(P)(i). But Congress did not do that: The CARES Act contains no language requiring the payment of agent fees. Indeed, its sole reference to such fees authorizes the SBA only to *limit* them. *Id.* § 636(a)(36)(P)(ii). *See Robin Johnson*, 2020 WL 5608683, at *7 (finding that this language "simply imposes a limit on the amount of fees an agent is permitted to collect in the event of an agreement for agent fees").

The Amended Complaint should be dismissed for two additional reasons: (1) neither the CARES Act nor the Small Business Act, which the PPP amends, creates a private right of action, which defeats Plaintiff's claims for declaratory relief (Count I), violations of the CARES Act (Count II), and violations of the SBA's 7(a) Loan Program (Count III); and (2) Plaintiff's state common-law claims (Counts IV–VI) fail because Plaintiff cannot adequately plead their necessary elements as a matter of law. For these and other reasons, the Amended Complaint should be dismissed with prejudice.

## BACKGROUND

### I. The Small Business Administration's Section 7(a) Loan Program

Although the PPP is new, the SBA's underlying Section 7(a) loan guarantee program, the SBA's largest, has a long history. Under the program, the SBA guarantees a percentage of a lender's loan to a small business if certain conditions are met. *See* 15 U.S.C. § 636(a). "Agents" may assist in submitting Section 7(a) loan applications under specified circumstances. *See* 13 C.F.R. § 103.2(b).[3] Nothing in the Small Business Act or its implementing regulations requires the use of an agent, and fewer than three percent of approved loans involve agents. *See* 85 Fed. Reg. 7,627 (Feb. 10, 2020) (reporting statistics for 2013–17); *Robin Johnson*, 2020 WL 5608683, at *1 n.2.

If a borrower chooses to use an agent, it must "certify to the [SBA] the names of any attorneys, agents, or other persons engaged by or on behalf of such business enterprise for the purpose of expediting applications made to the Administration for assistance of any sort, and the fees paid or to be paid to any such persons," and the SBA is *prohibited* from funding the loan without this information. 15 U.S.C. § 642. Building on these requirements, Part 103 of the

---

[3] An "agent" is defined as any "authorized representative, including an attorney, accountant, consultant, packager, lender service provider, or any other individual or entity representing an Applicant or Participant by conducting business with SBA." 13 C.F.R. § 103.1(a).

SBA's regulations[4] provides a comprehensive scheme that agents must satisfy when "[p]reparing or submitting on behalf of an applicant an application for financial assistance of any kind" from the SBA. 13 C.F.R. § 103.1(b)(1). For an agent to receive compensation, it "must execute and provide to SBA a compensation agreement," which "governs the compensation charged for services rendered or to be rendered to the Applicant or lender in any matter involving SBA assistance." *Id.* § 103.5(a). By requiring a compensation agreement *before* an agent may receive a fee, Congress and the SBA made agent compensation under the 7(a) Loan Program a matter to be settled by contract—not a statutory or regulatory entitlement. *Id.* These requirements have been in place since 1996. *See* 61 Fed. Reg. 2,679, 2,682.

The "SBA provides the form of compensation agreement . . . to be used by Agents." 13 C.F.R. § 103.5(a). Agents must use the SBA Form 159 Fee Disclosure and Compensation Agreement in connection with Section 7(a) loans. *See* Exhibit 2.[5] Form 159 "must be completed and signed by the SBA Lender and Applicant whenever an Agent is paid by either the Applicant or the SBA Lender in connection with the SBA loan application." *Id.* at 1. The agent must also certify the services to be performed and the compensation to be paid in connection with the loan. *Id.* at 2–3. If the fee exceeds $2,500, the agent must provide "1) a detailed explanation of the work performed; and 2) the hourly rate and the number of hours spent working on each activity." *Id.* at 2.

## II.     Congress Adopts the CARES Act and Creates the PPP.

In response to the global pandemic and national economic crisis caused by COVID-19, Congress passed and the President signed the CARES Act. The PPP, one component of the

---

[4] Section 1102(e) of the CARES Act rescinded certain modifications to those regulations that SBA had made in February 2020. This brief cites to the currently operative version of Part 103.

[5] *See* Small Business Administration ("SBA") Fee Disclosure and Compensation Agreement for use with 7(a) and 504 Loan Programs (Form 159 (04-18)). This document is publicly available and may be retrieved from the SBA's website using the following URL: https://www.sba.gov/sites/default/files/2018-09/Form%20159%20-%20%28FINAL%29%209.10.18.pdf (Exhibit 2).

CARES Act, made more than $600 billion in federal taxpayer-funded loans available to small businesses. *See* CARES Act § 1102(a)(2). PPP loans may be forgiven if the borrower meets statutory conditions for use of the funds. 15 U.S.C. § 9005 (b), (d).

In order to get PPP funds to borrowers quickly, Congress chose to use the existing Section 7(a) framework and therefore authorized the SBA to administer and guarantee PPP loans "under the same terms, conditions, and processes as a loan made under" the SBA's Section 7(a) Loan Program, unless "otherwise provided" by the CARES Act. *Id.* § 636(a)(36)(B). The CARES Act encourages lenders to offer PPP loans by directing the SBA to reimburse lenders for the cost of making loans on a per-loan, percentage basis. *Id.* § 636(a)(36)(P)(i) (providing for fees ranging from 1% for loans of $2 million or more to 5% for loans of $350,000 or less).

In contrast to Congress's instruction that *lenders* "shall" receive a fee for processing PPP loans, the CARES Act contains no similar provision with respect to agent fees. To the contrary, the CARES Act addresses agent fees in a provision titled "Fee Limits," which appears immediately after the provision regarding the fees payable to lenders. The "Fee Limits" provision provides that agents that assist an eligible recipient "*may not collect a fee in excess* of the limits established by the Administrator." *Id.* § 36(a)(36)(P)(ii) (emphasis added).[6] *See Sport & Wheat*, 2020 WL 4882416, at *3 (finding that the "different language used by Congress in mandating payment of lenders ('shall reimburse') and limiting agent fees ('may not collect') is indicative of an intent not to require lenders to pay agent fees"); *Robin Johnson*, 2020 WL 5608683, at *7 (noting that "when Congress wanted to compensate parties involved in processing PPP loan applications, as is the case with lenders, it did so explicitly"). Aside from this reference, the CARES Act does not alter the SBA's existing scheme for regulating agents and their compensation.

---

[6] The only other section that mentions agents is § 636(a)(36)(P)(iv), a "Sense of the Senate" provision that directs the SBA to "issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets . . . ."

### III.     The SBA's Regulations Implementing the PPP

Just hours before the PPP application window opened, the SBA issued its Interim Final Rule ("IFR") regulating the PPP.  85 Fed. Reg. 20,811 (Apr. 15, 2020).  The IFR required small businesses applying for a PPP loan to submit a form—the Paycheck Protection Program Borrower Application Form (Form 2483).  Exhibit 3.[7]  *See* 85 Fed. Reg. 20,812.  The Borrower Application Form requires the borrower to provide basic identifying information and average monthly payroll and number of employees, answer eight eligibility questions, and make certifications about the application's accuracy and how the loan proceeds will be used.  Exhibit 3.  Borrowers are permitted to complete SBA loan applications directly and do not need an agent to conduct business on their behalf.  *See* 13 C.F.R. § 103.2(a) ("If you are an Applicant . . . you may conduct business with SBA without a representative.").  The Borrower Application Form nowhere asks borrowers to list agents.  In contrast, lenders are required to complete the Paycheck Protection Program Lender Application Form (Form 2484), which requires basic identifying information and certifications, and specifically asks whether "the Lender [is] using a third party to assist in the preparation of the loan application or application materials, or to perform other services in connection with this loan."  Exhibit 4.[8]

The IFR mentions agents in just one section.  In accordance with Congress's instruction in section 36(a)(36)(P)(ii), the SBA set the "total amount that an agent may collect" for assisting with a PPP loan application:

---

[7] *See* SBA Paycheck Protection Program Borrower Application Form (Form 2483 (Revised June 24, 2020)).  This document is publicly available and may be retrieved from the SBA's website using the following URL: https://www.sba.gov/sites/default/files/2020-07/PPP-Borrower-Application-Form-508.pdf (Exhibit 3).

[8] *See* SBA Lender's Application – Paycheck Protection Program Loan Guaranty (Form 2484 (Revised June 12, 2020)).  This document is publicly available and may be retrieved from the SBA's website using the following URL: https://www.sba.gov/sites/default/files/2020-08/PPP-Lender-Application-Form-508.pdf (Exhibit 4).

**c. Who pays the fee to an agent who assists a borrower?**

Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:

   i. One (1) percent for loans of not more than $350,000;

   ii. 0.50 percent for loans of more than $350,000 and less than $2 million; and

   iii. 0.25 percent for loans of at least $2 million.

The Act authorizes the Administrator to establish limits on agent fees. The Administrator, in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans.

85 Fed. Reg. 20,816.  Like the CARES Act, nothing in the IFR *requires* lenders to pay fees to anyone claiming to be an agent of a borrower.  *See Sport & Wheat*, 2020 WL 4882416, at *3 (finding that the IFR "does not <u>require</u> that lenders share their fees . . . instead, the language simply explains that, if an agent is to be paid a fee, the fee must be paid by the lender from the fee it receives from the SBA").

## IV.  The Treasury Secretary and the AICPA Interpret the Agent Fee Rules Consistent with Defendants' Interpretation.

Consistent with the plain language and structure of the CARES Act and SBA rules, many lenders, including many defendants in the proliferation of similar actions filed nationwide, have consistently declined to pay fees to purported "agents" in the absence of a pre-existing contractual arrangement.  BofA, for example, has stated its position unequivocally on its website: "[I]n the absence of a preloan approval written agreement between the agent and Bank of

America, Bank of America does not pay fees or other compensation to agents who represent or assist borrowers through the [PPP]." Exhibit 5.[9]

Consistent with these lenders' positions, shortly after the SBA began accepting PPP applications, the Association of International Certified Public Accountants ("AICPA") cautioned accountants—like Plaintiff—that "there is a possibility that you will not be paid for your services" assisting borrowers with PPP applications. Exhibit 6.[10] The AICPA advised agents to "discuss this issue with clients and the banks to ensure there is an understanding, preferably in writing, as to how and when any fees will be paid." *Id. See also* Exhibit 7 ("To help advance a clear and orderly loan application process, we're recommending the CPA contact the lender prior to offering assistance and performing advisory work to the client. This will ensure the lender has agreed to compensate the CPA firm for its service. If the lender agrees to compensate the CPA firm for its service, the relationship should be documented and disclosed to the small business.").[11]

The Secretary of the Treasury has confirmed in Congressional testimony that the lenders' position is correct. On June 30, 2020, Secretary Mnuchin testified before the House Committee on Financial Services concerning the PPP. He was asked about these lawsuits and whether "an

---

[9] *See* Bank of America document titled "CARES Act Paycheck Protection Program: Frequently Asked Questions," accessed September 28, 2020. This document is publicly available and may be retrieved from BofA's website using the following URL: https://about.bankofamerica.com/promo/assistance/faqs/small-business-paycheck-protection-program (Exhibit 5).

[10] *See* "Small Business Loans Under the [PPP]: Issues Related to CPA Involvement" and dated April 22, 2020, published by the Association of International Certified Public Accountants. This document may be retrieved using the following URL: https://future.aicpa.org/resources/article/small-business-loans-under-the-payroll-protection-program-issues-related-to (Exhibit 6).

[11] *See* "AICPA Offers Recommendations for Firm-Lender Relationship for Paycheck Protection Program," dated April 23, 2020, published by the Association of International Certified Public Accountants. This document is publicly available and may be retrieved using the following URL: https://www.aicpa.org/press/pressreleases/2020/aicpa-offers-recommendations-for-firm-lender-relationship-for-coronavirus-paycheck-protection-program.html (Exhibit 7).

agreement between a bank and an agent [was] required before any work on the application is completed." Exhibit 1. Secretary Mnuchin explained that any fees paid to agents was "*intended to be based upon a contractual relationship between the agent and the bank.*" *Id.* (emphasis added).

## V. Plaintiff Filed This Lawsuit Without Entering into *Any* Compensation Agreements With *Any* of the Defendants.

Plaintiff is a financial advisory firm. Am. Compl. ¶ 1. Although Plaintiff alleges that it helped applicants apply for PPP loans from Defendants, Plaintiff's Amended Complaint fails to identify the name of *any* of these clients, or *any* details of the work supposedly done for these clients, or *any* demand for payment of agent fees made to any Defendant prior to this lawsuit. *Id.* at ¶¶ 46–55.

Plaintiff's central contention is that it suffered "financial harm by . . . being deprived of the statutorily-mandated compensation for the professional services that [it] provided in connection with assisting [] clients in applying for and obtaining PPP loans . . . ." *Id.* at ¶ 55. Based on that central theory, Plaintiff asserts a claim for Declaratory Relief (Count I), Violations of the CARES Act (Count II), Violations of the SBA's 7(a) Loan Program (Count III), as well as a hodge-podge of state law claims, including Conversion (Count IV), Unjust Enrichment (in the alternative) (Count V), and Estoppel (Count VI). Each of these six claims hinges upon Plaintiff's contention that the CARES Act and its accompanying regulations require lenders to pay a portion of their PPP loan-processing fees to agents, regardless of whether the lender agreed to pay such fees or even knew that the agent was providing services to a borrower.[12]

### PROCEDURAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of

---

[12] *See* Am. Compl. ¶¶ 71–76 (Count I); ¶¶ 80, 82. 84 (Count II); ¶¶ 89, 91 (Count III); ¶¶ 94–95, 97, 100 (Count IV); ¶¶ 107–09, 114 (Count V); and ¶¶ 119–20, 123 (Count VI).

action, supported by mere conclusory statements, do not suffice." *Id.  See also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[W]e accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth.").  Dismissal is proper "when the complaint lacks either a cognizable legal theory or fails to allege sufficient facts under a cognizable theory." *Bielskis v. Louisville Ladders Inc.*, No. 07-C-1411, 2007 WL 2088583, at *1 (N.D. Ill. July 18, 2007).

## ARGUMENT

All of Plaintiff's claims require it to demonstrate at the outset a "statutorily mandated" entitlement to agent fees, regardless of whether the lender agreed to pay such fees or even knew that the agent was providing services to a borrower. Am. Compl. ¶ 55. Section I explains that neither the CARES Act nor the IFR entitle undisclosed agents to SBA PPP fee payments, as both courts that have addressed this issue have ruled.  *See, e.g.*, *Robin Johnson*, 2020 WL 5608683, at *7 ("The Court finds that [the CARES Act] does not create an independent entitlement for agent fees; rather, it simply imposes a limit on the amount of fees an agent is permitted to collect in the event of an agreement for agent fees."); *Sport & Wheat*, 2020 WL 4882416, at *2–3 (holding that the premise that "the CARES Act and its implementing regulation <u>require</u> lenders to pay the borrowers' agent fees" finds "no support in the plain language of the statute or the regulation") (footnote omitted).  This dooms all of Plaintiff's claims.  Even if the Court were to adopt Plaintiff's reading of the CARES Act and accompanying SBA and PPP regulations, Counts I–III still fail because Plaintiff lacks a private right of action to assert these claims, as explained in Section II.  Finally, Section III explains why Plaintiff's common law claims (Counts IV–VI) fail for the additional reason that Plaintiff cannot plead the required elements.

## I.  NEITHER THE CARES ACT NOR THE IFR ENTITLES AGENTS TO FEES FROM LENDERS IN THE ABSENCE OF A CONTRACT.

In support of its claimed entitlement to agent fees, Plaintiff's Amended Complaint does not refer to a single section, sentence, or even a single word in the CARES Act.  There is good

reason for this: there is no such text in the statute. Rather, Plaintiff relies solely on a misreading of a line in the IFR that implements the CARES Act's mandate to clarify the *limits* on agent fees. Pursuant to the CARES Act's direction that agents "*may not* collect a fee in excess of the limits established by the Administrator," 15 U.S.C. § 636(a)(36)(P)(ii) (emphasis added), the IFR provides that "[a]gent fees will be paid by the lender out of the fees the lender receives from SBA," 85 Fed. Reg. at 20,816. According to Plaintiff, that one regulatory statement somehow upended Congress' intent as set forth in the statute, and the SBA's existing regulatory framework and longstanding practice for when and under what circumstances agent fees are paid. But the IFR says no such thing, and none of the SBA, Treasury, or Congress has even suggested it intended to create any new sweeping entitlement to agent fees for agents who ignore the SBA's requirements. To the contrary, the Treasury Secretary has expressly disclaimed that result in Congressional testimony, and the only courts to have addressed this issue have soundly rejected Plaintiff's theory. *See Sport & Wheat*, 2020 WL 4882416; *Robin Johnson*, 2020 WL 5608683.

A. **The CARES Act Does Not Require Lenders to Pay Fees to Agents.**

Although the Amended Complaint is premised on the proposition that it was Congress's "intent" that "statutorily-mandated fee[s]" be paid to agents, Am. Compl. ¶ 44, no provision in the CARES Act suggests such an intent or imposes such a requirement, *see Robin Johnson*, 2020 WL 5608683, at *7 ("The Court finds that [the CARES Act] does not create an independent entitlement for agent fees; rather, it simply imposes a limit on the amount of fees an agent is permitted to collect in the event of an agreement for agent fees."); *Sport & Wheat*, 2020 WL 4882416, at *2–3. In fact, it is just the opposite. The CARES Act's only reference to agent fees is *prohibitive*, providing for a *ceiling* in the event a fee is owed: "An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator." 15 U.S.C. § 636(a)(36)(P)(ii). *See Robin Johnson*, 2020 WL 5608683, at *6. Neither the CARES Act nor the PPP regulations sets any *floor*. *See Sport & Wheat*, 2020 WL 4882416, at *2.

"[A] natural reading of the full text" of a statute is "the first criterion in the interpretive hierarchy." *United States v. Wells*, 519 U.S. 482, 490 (1997); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013) ("[I]t would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope."). "Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (alteration omitted); *see also DHS v. MacLean*, 574 U.S. 383, 391 (2015) (same).

A restriction on the amount of fees an agent "may . . . collect" imposes no affirmative duties on lenders to pay a fee. Congress knows how to create a mandatory fee structure and did so explicitly in the subsection immediately preceding the limitation on agent fees. Congress mandated that the SBA "*shall reimburse* a lender authorized to make a covered loan at a rate" based on the size of the loan. 15 U.S.C. § 636(a)(36)(P)(i) (emphasis added). *See Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756–57 (7th Cir. 1992) (collecting cases concluding that "shall" is mandatory language). No similar mandate appears in the statute with respect to agent fees. The stark contrast between the two CARES Act provisions governing lender fees and agent fees—coming one right after the other—confirms that Congress did not intend to *require* lenders to pay agent fees absent a lender's contractual undertaking to do so. The two courts to have already addressed this issue agree: "[T]he different language used by Congress in mandating payment of lenders ('shall reimburse') and limiting agent fees ('may not collect') is indicative of an intent not to require lenders to pay agent fees." *Sport & Wheat*, 2020 WL 4882416, at *3; *Robin Johnson*, 2020 WL 5608683, at *7 ("Such a reading is bolstered by the fact that when Congress wanted to compensate parties involved in processing PPP loan applications, as is the case with lenders, it did so explicitly.").

**B.** **The CARES Act Directs the SBA to Implement the PPP Under the Section 7(a) Loan Program, Which Has Clear Rules for Agent Compensation.**

The goal of the PPP was to provide liquidity quickly to small businesses facing unprecedented economic catastrophes. Rather than draft a new loan program, Congress authorized the SBA to make PPP loans available under the SBA's established Section 7(a) Loan Program. *See* CARES Act § 1102 (amending 15 U.S.C. § 636(a)); 85 Fed. Reg. 20,811–12 (describing the PPP as a "new 7(a) program" whose requirements "temporarily supersede any conflicting [Section 7(a)] Loan Program Requirement"). Congress further directed that "[e]xcept as otherwise provided" in Section 636(a)(36), the SBA "may guarantee [PPP loans] under the *same terms, conditions, and processes* as a loan made under" the existing Section 7(a) Loan Program. 15 U.S.C. § 636(a)(36)(B) (emphasis added). *See also Sport & Wheat*, 2020 WL 4882416, at *3 ("The PPP was added to and exists within the framework of Section 7(a).").

In so doing, Congress incorporated into the PPP the SBA's well-established eligibility requirements for agent compensation, including the requirement of a compensation agreement to which the lender and applicant are also parties *before* an agent may receive a fee. 13 C.F.R. § 103.5(a). "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change." *Lindahl v. OPM*, 470 U.S. 768, 783 n.15 (1985) (quotation marks and citation omitted). *See also Nisi v. Brown*, 369 F. Supp. 3d 848, 853 (N.D. Ill. 2019) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)). Courts read "the words of a statute" in "their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989).

Aside from setting limits on agent fees, the CARES Act says nothing about them. Congress therefore must have intended that the existing regulations concerning agent fees, which apply to "any matter involving SBA assistance," cover PPP loans as well.[13] *Id.*; *Whitman v. Am.*

---

[13] Plaintiff's Amended Complaint references certain purported differences "between the traditional 7(a) loans and PPP loans." Am. Compl. ¶ 32; *id.* Ex. A. That only proves Defendants' point: Where Congress in the CARES Act modified certain components of the 7(a) program, it did so expressly.

*Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."). Both courts that have considered this issue agree. *See Sport & Wheat*, 2020 WL 4882416, at *4 (holding that "because these existing program requirements do not conflict with the IFR, they apply to agents who assist borrowers in obtaining loans under the PPP"); *Robin Johnson*, 2020 WL 5608683, at *7 ("Nothing in these regulations . . . is inconsistent with the Section 7(a) requirement that an agent must first execute an agreement before receiving any agent fees.").

Deeply held principles of agency and freedom of contract support Congress's choice to leave undisturbed the SBA's 24-year-old rule requiring a compensation agreement among a lender, agent, and borrower as a precondition to the agent's entitlement to a fee. *See* Restatement (First) of the Law of Restitution § 2 cmt. a. ("A person is not required to deal with another unless he so desires."); Restatement (Second) of the Law of Agency § 441 cmt. c. ("[O]ne has no duty to pay for services officiously rendered without request although resulting in benefit to him.").

## C. Plaintiff's Reliance on the IFR and the Information Sheet Is Misplaced.

Plaintiff ignores the CARES Act, relying instead on a misplaced reading of one provision in the IFR and a related informal Information Sheet. Am. Compl. ¶¶ 24, 39–41. *See* Exhibit 8 at 1–2.[14] Neither supports Plaintiff's claims. Because the PPP provision and Information Sheet do not conflict with the SBA's longstanding agent fee regulation, the Court should reject it. *See Lyng v. Payne*, 476 U.S. 926, 937 (1986) (holding "an agency's power is no greater than that delegated to it by Congress"); *see also Nielen-Thomas v. Concorde Inv. Servs., LLC*, 914 F.3d 524, 528 (7th Cir. 2019) ("When confronting an issue of statutory interpretation, we must always

---

[14] *See* "Paycheck Protection Program (PPP) Information Sheet – Lenders," published by the U.S. Department of the Treasury. This document is publicly available and may be retrieved from the Department of the Treasury's website using the following URL: https://home.treasury .gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf? (Exhibit 8).

begin with the text and give effect to the clear meaning of statutes as written. . . . We also read a statute as a whole rather than as a series of unrelated and isolated provisions. . . . We must also, if possible, give effect to every clause and word of a statute, taking care not to read words into the text or to treat any words as surplusage.") (quotation marks and citations omitted).

### 1. The IFR Does Not Entitle Agents to Receive Fees.

*Nothing* in the IFR requires lenders to pay fees to agents without a prior contractual relationship. Rather, the IFR *limits* the "total amount that an agent *may* collect." 85 Fed. Reg. 20,816 (emphasis added). To the extent an agent "may" collect a fee, the IFR also directs that the fee "will be paid by the lender out of the fees the lender receives from SBA," and not from "the borrower . . . or the PPP loan proceeds." *Id.* These rules follow from the CARES Act's provision that an agent "may not collect a fee in excess" of SBA limits. Together, the Act and the IFR direct that where an agent is to be compensated for assisting a lender or a borrower, such compensation must be paid by the lender, up to a maximum amount set forth in the IFR. But that does not change the longstanding rule that an agent is not entitled to compensation in the absence of a contractual arrangement with the lender. *See Robin Johnson*, 2020 WL 5608683, at *7 (finding that the PPP regulations "do not entitle agents to fees but simply regulate how such fees would be paid when they are to be paid"). The Treasury Secretary confirmed this when he testified recently about this exact issue, testifying that agent fees were "intended to be based upon a contractual relationship between the agent and the bank." Exhibit 1. *See supra* Background, Section IV.

Plaintiff nonetheless contends that "the Treasury [Department] determined that the best and quickest way to get the PPP loans to the small business Borrowers was to" implement a mandatory agent-fee entitlement whereby "the Lender and the Agent are to split the Federal Government fees with approximately 80% to be retained by the Lender, and 20% to be forwarded to the Agent by the Lender from its Lender Fees received." Am. Compl. ¶ 28. There is no evidence that the Treasury Department made any such determination. On the contrary, the

Treasury Secretary expressly rejected Plaintiff's assertion, and it is fundamentally inconsistent with the IFR's plain text.

The IFR nowhere creates a mandatory entitlement to a set amount of fees; rather, it purports to set *maximum* fee amounts. The IFR's imposition of fee caps indicates that the SBA intended for lenders and agents to negotiate compensation amounts up to the maximums, which would be included in the compensation agreement and disclosed to the SBA, consistent with existing regulations. Setting a maximum fee makes no sense if, as Plaintiff contends, the SBA intended for agents to always receive that amount. *See, e.g.*, *Robin Johnson*, 2020 WL 5608683, at *6 n.14. In that event, the SBA simply would have specified the amounts agents were to receive, as Congress and the SBA did for PPP lenders. *See* 15 U.S.C. § 636(a)(36)(P)(i).

Plaintiff's reading of the IFR would upend the SBA's long-established and well-reasoned structure for regulating agent fees by eliminating the requirement that "agents are only entitled to receive fees for their work in connection with securing a loan where they first execute a 'compensation agreement' signed by the lender, agent, and applicant," *Robin Johnson*, 2020 WL 5608683, at *7, and replacing it with an unregulated and unmanageable payment guarantee. As Plaintiff would have it, agents are entitled in all cases to claim fees from lenders based solely on the loan amount, regardless of the time allegedly expended, the services purportedly performed, or the value of those services. And the agents would be under no obligation to explain or justify their work.

This is a recipe for fraud.[15] Exhibit 9.[16] In 2015, the SBA Office of the Inspector General prepared a report entitled "SBA Needs to Improve Its Oversight of Loan Agents," which

---

[15] In its Amended Complaint, Plaintiff poses the following question: "[W]hy would the SBA Regulations require that a Borrower's own Agent, who is likely its CPA, accountant, bookkeeper or payroll service, be approved by the Lender." Am. Compl. ¶ 30. The answer, which applies equally to all Section 7(a) loans and is one of the express reasons that motivated the creation of the Form 159 in the first instance, is "to mitigate the risk associated with loan agent participation, and to protect program participants and taxpayers from fraud and abuse." Exhibit 2 at 5.

[16] *See* SBA Office of the Inspector General, "Report on the Most Serious Management

recognized the inherent fraud possibilities that exist with unregulated agents.  The Report noted that 13 C.F.R. § 103.5 and Form 159 were adopted "to mitigate the risk associated with loan agent participation, and to protect program participants and taxpayers from fraud and abuse." Exhibit 10 at 5.[17]  Removing these requirements would run directly counter to the SBA's longstanding efforts and focus on preventing fraud and abuse in connection with agent-fee requests.  It would also place an unrealistic and unmanageable burden on the lenders to monitor and confirm that purported agents actually performed the claimed services.  And if multiple agents claim they assisted with a single PPP loan application, the lender's fee quickly could be exhausted, even if the agents were *unknown* to the lenders until after the loan was fully processed.  *See Senne v. Vill. of Palatine, Illinois*, 784 F.3d 444, 447 (7th Cir. 2015) ("[S]tatutes have to be interpreted to avoid absurd results.").

Plaintiff relies heavily on an informal Information Sheet issued by the Treasury Department.  Exhibit 8.  The two-page document, however, merely paraphrases the CARES Act and the IFR by providing that if agents are entitled to fees, those fees "will be paid out of lender" fees and "[t]he lender will pay the agent."  *Id.* at 2.  Like the CARES Act and the IFR, the Treasury Department's Information Sheet does not guarantee that agents will receive fees, as the Treasury Secretary confirmed.  Exhibit 1.  Nor could it: "[I]nterpretations contained in policy statements . . . lack the force of law."  *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

---

and Performance Challenges Facing the Small Business Administration in Fiscal Year 2019," dated October 11, 2018.  This document is publicly available and may be retrieved from the SBA's website using the following URL: https://www.sba.gov/sites/default/files/oig/SBA-OIG-Report-19-01.pdf?utm_medium=email&utm_source=govdelivery (Exhibit 9).

[17] *See* SBA Office of the Inspector General, "SBA Needs to Improve Its Oversight of Loan Agents" and dated September 25, 2015.  This document is publicly available and may be retrieved from the SBA's website using the following URL: https://www.sba.gov/sites/default /files/oig/Report15-16_SBA_Needs_to_Improve_Its_Oversight_of_Loan_Agents.pdf (Exhibit 10).

### 2. The SBA Did Not Change Its Longstanding Agent Fee Regulations.

Longstanding SBA regulations require that Form 159 compensation agreements must be in place for agents to receive payment in "any matter involving SBA assistance," 13 C.F.R. § 103.5—which necessarily includes PPP loans. *See supra* Background Section I. Nothing in the CARES Act or the IFR purports to alter that requirement. Accordingly, both courts that have interpreted the IFR "agreed" with the defendants' position that "the existing Section 7(a) regulations require such an agreement as a prerequisite to the lender's payment of agent fees." *Sport & Wheat*, 2020 WL 4882416, at *3; *see also Robin Johnson*, 2020 WL 5608683, at *7 (finding that "longstanding SBA regulations" require a "compensation agreement signed by the lender, agent, and applicant" before an agent is "entitled to receive fees") (quotation marks omitted).

Agencies may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (citing *United States v. Nixon*, 418 U.S. 683, 696 (1974)). "[T]he requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position," *id.*, which the SBA has not done. Agencies do not "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—[they] do not, one might say, hide elephants in mouseholes." *See Whitman*, 531 U.S. at 468. This further confirms that the SBA did not alter course.

Plaintiff contends that the SBA's IFR "expressly supersedes" the prerequisite of an executed Form 159. Am. Compl. ¶ 32. But the IFR contains no such "express" language—it does not even mention Form 159. On the contrary, 13 C.F.R. § 103.5 and the IFR work in concert—with the former governing an agent's *eligibility* to receive a fee, and the latter governing the *source* and *maximum amount* of any such fee, with no hint of overlap or contradiction. The court in *Sport & Wheat* held exactly this. 2020 WL 4882416, at *3–4.

In addition to Form 159, the SBA's required forms for PPP borrowers and lenders confirm that the SBA did not intend to change its longstanding rules preventing agents from

collecting fees in the absence of a contract. The PPP Borrower Application Form states, "[t]he estimated time for completing this application, including gathering data needed, is 8 minutes." Exhibit 3 at 3; *Robin Johnson*, 2020 WL 5608683, at *8. The SBA's regulations have long contemplated that small businesses can apply for Section 7(a) loans, including PPP loans, "without a representative," 13 C.F.R. § 103.2(a), which more than 97 percent of businesses do, 85 Fed. Reg. 7,627. Had the SBA intended to break decades of settled SBA policy to entitle every putative agent that claimed to help a PPP borrower to a fee, it would have at least required that those agents be *identified* to their respective lenders. But the Borrower Application Form (what PPP borrowers submit) does not ask borrowers to identify agents who assisted them.

Unlike the *Borrower* Application Form, the *Lender* Application Form does ask the lender to identify whether the *lender* used an agent. *See* Exhibit 4 at Question K ("Is the Lender using a third party to assist in the preparation of the loan application or application materials, or to perform other services in connection with this loan?"). This makes sense because when the lender retains an agent, the requisite contractual obligation exists and the agent may claim a fee pursuant to the contract, within the limitations set by the CARES Act and the IFR. Tracking those requirements, the Lender Application notes that "[i]f yes, Lender may not pass any agent fee through to the Applicant or offset or pay the fee with the proceeds of this loan." *Id.* That the SBA asked lenders to identify lender-engaged agents, but did not ask borrowers to identify borrower-engaged agents, further confirms that the SBA did not intend every self-described agent to receive a fee from the lender.

The SBA's PPP Lender Agreement also is inconsistent with Plaintiff's position. Exhibit 11.[18] This form provides that the SBA will guarantee loans only if lenders approve, close,

---

[18] *See* SBA CARES Act Section 1102 Lender Agreement. This document is publicly available and may be retrieved from the SBA's website using the following URL: https://www.sba.gov/sites/default/files/2020-06/SBA%20Form%203506%20CARES%20Act%20Section%201102%20Lender%20Agreement%2004022020-508.pdf (Exhibit 11). The Lender Agreement (as distinct from the Lender Application Form) is a form lenders complete in order to be eligible to participate in the PPP.

disburse, service, and liquidate PPP loans in accordance with the PPP and "any other Loan Program Requirements, as defined in 13 C.F.R. § 120.10." *Id.* at § 2. Section 120.10 in turn defines "Loan Program Requirements" as including "official SBA notices and forms applicable to the 7(a) Loan Program." 13 C.F.R. § 120.10. These existing "terms, conditions, and processes" include the requirement that agents must "execute and provide to the SBA a compensation agreement" using Form 159 before agents may receive "compensation charged for services rendered . . . to the Applicant or lender in any matter involving SBA assistance." 13 C.F.R. § 103.5(b).

Plaintiff's proposed interpretation also would contradict SBA policy guarding against fraud and abuse by permitting agents to claim after-the-fact to have assisted borrowers with PPP applications and demand a portion of the lender's processing fee regardless of the services provided and without the lender's consent. The SBA's Form 159 Compensation Agreement provides a triple-check against fraud: agents, borrowers, and lenders must consent to the relationship. Exhibit 2. Lenders must also confirm that the agent is not "debarred, suspended, proposed for debarment, declared ineligible or voluntarily excluded from participation in th[e] transaction by any Federal department or Agency." *Id.* Given the SBA's documented concerns about agent fee fraud,[19] there is every reason to believe that the SBA intended to maintain this important anti-fraud safeguard.

---

[19] *See, e.g.,* Exhibit 9 ("OIG investigations have revealed a pattern of fraud by loan packagers and other for-fee agents in the 7(a) Loan Program, involving hundreds of millions of dollars" and the SBA has "made substantial progress in developing effective methods to disclose and track loan agent activities on 7(a) program loans" by requiring the completion of Form 159 agreements)"; SBA Standard Operating Procedure 50 10 5(K) (explaining that the SBA requires disclosure of agent fee agreements to ensure any fees charged to applicants are not "unreasonable or impermissible"). This document is publicly available and may be retrieved from the SBA's website using the following URL: https://www.sba.gov/sites/default/files/2019-02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20paste.pdf (Exhibit 12).

## II.   COUNTS I–III SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS A PRIVATE RIGHT OF ACTION.

Each of Plaintiff's six causes of action depends on the proposition that Plaintiff is entitled to receive fees from Defendants under the CARES Act.  *See supra* at note 12.  Because that is incorrect as a matter of law, for the reasons shown above and as two courts have now held, all of Plaintiff's claims fail as a matter of law.  Even assuming for argument's sake that the CARES Act could be read to support an entitlement to agent fees, Counts I (Declaratory Judgment), II (Violations of CARES Act), and III (Violations of SBA's 7(a) Loan Program) still would fail because Plaintiff lacks a right of action to claim such fees.

### A.   The CARES Act Does Not Grant a Private Right of Action.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  There is a "strong presumption . . . against" implying a private right of action.  *Statland v. American Airlines, Inc.*, 998 F.2d 539, 540 (7th Cir. 1993) (quoting *West Allis Memorial Hospital, Inc. v. Bowen*, 852 F.2d 251, 254 (7th Cir. 1988)).  The only courts to address whether the PPP provisions of the CARES Act provides a private right of action have held that it does not.  *Robin Johnson*, 2020 WL 5608683, at *8 ("[T]here is no private cause of action to enforce this provision of the CARES Act."); *Profiles, Inc. v. Bank of Am. Corp.*, 2020 WL 1849710, at *4, *7 (D. Md. Apr. 13, 2020) ("[T]he CARES Act does not expressly provide a private right of action" and does not impliedly create a private right of action.).  *See also Sport & Wheat*, 2020 WL 4882416, at *3 n.6 ("[I]t is doubtful that . . . a private right of action exists" under the CARES Act but declining to reach the question "because the claim asserted by Plaintiff under the DJA clearly fails on the merits.").

The central inquiry in assessing whether a statute creates an implied private right of action—whether the statute "displays an intent to create both a private right and a private remedy," *Chessie Logistics Company v. Krinos Holdings, Inc.*, 867 F.3d 852, 857–58 (7th Cir. 2017)—confirms this conclusion.  Nothing in the "text and structure" of the CARES Act would suggest, let alone "yield a clear manifestation," that Congress intended to create a private cause

22

of action. *See Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011). The CARES Act contains none of the "critical" "rights-creating language" that may imply Congress intended to confer a private right of action on a benefitted person or class. *Chessie Logistics Company*, 867 F.3d at 857. Indeed, far from creating *rights* for agents, the provision at issue creates a new *restriction* for agents: It prohibits agents from collecting a fee greater than the limits set by the SBA. Nor is the CARES Act focused on the rights of agents—it discusses them only to note that the SBA can *limit* their fees. 15 U.S.C. § 636(a)(36)(P)(ii). *See Sandoval*, 532 U.S. at 289 ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons."); *Robin Johnson*, 2020 WL 5608683, at *9 ("There is no language in the CARES Act that suggests Congress intended for agents—who are not even the intended beneficiary of a statute that is designed to get money in the hands of small businesses—to have a private remedy.").

The Small Business Act itself, which the CARES Act incorporates and amends, also does not contain any provisions that would imply Congress intended to create a private right of action in the CARES Act. *See Profiles*, 2020 WL 1849710, at *11–13 (collecting authorities finding that "the [Small Business Act] does not contain an implied right of action" and concluding that the CARES Act does not either). Every circuit to consider whether the Small Business Act— which the CARES Act amends—affords a private right of action concluded that it does not. *See Crandal v. Ball, Ball & Brosamer, Inc.*, 99 F.3d 907, 909 (9th Cir. 1996) ("Other circuits that have considered the question have unanimously agreed that the Small Business Act does not create a private right of action in individuals.") (collecting cases). In fact, the Small Business Act creates a robust criminal and civil enforcement regime, *see* 15 U.S.C. § 650(c), which "tend[s] to contradict a congressional intent to create privately enforceable rights," *Sandoval*, 532 U.S. at 289. *See id.* at 290 (finding that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others").

**B.** **The Lack of a Private Right of Action Defeats Plaintiff's Claims under the CARES Act, the SBA's 7(a) Loan Program, and the Declaratory Judgment Act.**

Because there is no express or implied private right of action to enforce the contested provisions in the CARES Act or the Small Business Act, Plaintiff's claims under the CARES Act (Count II) and the SBA's 7(a) Loan Program (Count III) fail even assuming for argument's sake that Plaintiff's interpretation of the statute and regulations were correct.

Plaintiff's claim for a declaratory judgment to enforce "PPP Regulations" (Count I), Am. Compl. ¶¶ 71–76 (alleging only violations of the SBA and PPP regulations), fails for the same reason. The Declaratory Judgment Act creates no substantive legal rights. Rather, it authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he operation of the Declaratory Judgment Act is procedural only." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). The "availability of [declaratory] relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *Alarm Detection Systems, Inc. v. Orland Fire Protection District*, 929 F.3d 865, 871 n.2 (7th Cir. 2019) (same).

On these principles, similar attempts to invoke the Declaratory Judgment Act to assert a claim under the CARES Act have been rightly rejected. *See Profiles*, 2020 WL 1849710, at *7 n.6 (plaintiff had no claim under the Declaratory Judgment Act because the CARES Act lacks an independent cause of action); *Sport & Wheat*, 2020 WL 4882416, at *4 ("Accordingly, Defendants have no legal obligation under the CARES Act or the IFR to pay Plaintiff an 'agent fee' for helping the borrowers get PPP loans from Defendants, and on that basis, [the declaratory judgment count] is due to be dismissed."); *Robin Johnson*, 2020 WL 5608683, at *8 (similar).

**III.** **PLAINTIFF'S COMMON-LAW CLAIMS (COUNTS IV–VI) SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT PLEAD THEIR NECESSARY ELEMENTS.**

Plaintiff cannot adequately plead the necessary elements of its common-law claims (Counts IV–VI). Each, therefore, fails independently on the merits.

### A. Plaintiff's Conversion Claim Fails Because Plaintiff Cannot Plead That Any of the Lender Fees Paid by the SBA to Defendants Were Wrongfully Converted.

Plaintiff alleges Defendants unlawfully converted the agent fees allegedly owed to it for assisting clients with PPP loan applications (Count IV).  Am. Compl. ¶ 96.  To plead conversion, Plaintiff must show: "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 614 (7th Cir. 2013) (quoting *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 97 (Ill. 1990)).  Plaintiff cannot plead any of these elements.

First, for the reasons stated above, Plaintiff is not entitled to any fees under the CARES Act or the SBA.  Plaintiff pleads neither Defendants' wrongful assumption of any property belonging to Plaintiff, nor Plaintiff's right to any fees as its property.  *Cohen*, 735 F.3d at 615 (affirming dismissal of conversion claim where defendant committed no wrongful conduct and plaintiff failed to allege right to property at issue); *see also Robin Johnson*, 2020 WL 5608683, at *10 (dismissing conversion claim "because the Court holds that the PPP rules and regulations do not entitle plaintiffs to agent fees"); *Sport & Wheat*, 2020 WL 4882416, at *4 (same).

Second, to establish its "absolute" right to agent fees, Plaintiff must show that "the money at all times belonged unconditionally to [Plaintiff]."  *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002).  There can be no such showing where Plaintiff acknowledges that Defendants duly received lender fees from the SBA, and alleges merely that Plaintiff was required to pay some portion of those fees to Plaintiff, Am. Compl. ¶ 96; this amounts to "a mere obligation to pay money" that cannot sustain a conversion claim.  *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009) (quoting *In re Thebus,* 483 N.E.2d 1258, 1260 (Ill. 1985)).

Nor can there be such a showing where, as here, the CARES Act and PPP regulations set only a maximum ceiling on agent fees, but no floor, and Plaintiff fails to point to a specific sum it is owed. "[A] defendant wrongfully depriving a plaintiff of an indeterminate sum of money is liable for a debt rather than a conversion." *Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir. 1989).

Last, despite having had the opportunity to amend, Plaintiff still has not pled that it made a pre-suit demand on *any* of the Defendants that was refused. This alone is fatal to its conversion claim. *Am. Inter-Fid. Corp. v. M.L. Sullivan Ins. Agency, Inc.*, 2016 WL 3940092, at *7 (N.D. Ill. July 21, 2016) ("Failure to allege facts to satisfy the demand element is reason enough to dismiss Plaintiff's conversion claim."). Filing this lawsuit does not constitute a demand that could sustain a conversion claim. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 741–42 (7th Cir. 2016) ("[M]aking a demand prior to filing a lawsuit is necessary to sustain a conversion claim under Illinois law.").

> **B.**    **Plaintiff's Unjust Enrichment Claim Fails Because Plaintiff Cannot Allege That Defendants Unjustly or Wrongly Obtained a Benefit from Plaintiff When Defendants Received Lender Fees from the SBA.**

Plaintiff cannot plead the necessary elements to support an unjust enrichment claim based on Defendants' alleged "wrongful withholding of Agent Fees from the Lender Fees" Defendants received from the SBA (Count V). Am. Compl. ¶ 106.

To state a claim for unjust enrichment under Illinois law, Plaintiff must allege "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quotation marks and citation omitted). To establish the "unjustness" of the enrichment where, as here, the purportedly unjustly retained benefit was transferred to the defendant by a third party, a plaintiff

must show one of three circumstances: (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant, (2) the defendant procured the benefit through some type of wrongful conduct, or (3) the plaintiff has a better claim to the benefit than the defendant. *Nat'l Am. Ins. Co. v. Indiana Lumbermens Mut. Ins. Co.*, 221 F.3d 1339 (7th Cir. 2000).

Plaintiff does not allege any of the circumstances required to plead the "unjustness" of Defendants' enrichment by the SBA as a third party. Because it is undisputed that the payment of lender fees "was intentionally made" by the SBA to Defendants, "the only possible applicable scenario here" is that Plaintiff enjoys a "better claim" to a portion of those fees than Defendants. *Zurich Am. Ins. Co. v. MB Fin. Bank, N.A.*, 2020 IL App (1st) 190767-U, ¶ 53. But any allegation of a "better claim" here "rests on the same improper conduct alleged" under the CARES Act and fails for the same reasons. *Cleary*, 656 F.3d at 517 (applying Illinois law) ("unjust enrichment will stand or fall with the related claim"); *see also Martis v. Grinnell Mut. Reins. Co.,* 905 N.E.2d 920, 928 (Ill. App. 3d Dist. 2009) (unjust enrichment claim "is not a separate cause of action that, standing alone, will justify an action for recovery"); *Robin Johnson*, 2020 WL 5608683, at *10 (rejecting plaintiffs' unjust enrichment claims under New York law because the "PPP rules and regulations do not entitle plaintiffs to agent fees").

### C. Plaintiff's Estoppel Claim Fails Because None of the Elements of Any Estoppel Theory (Such as a Promise by Lenders, or Reliance by Plaintiff) Apply to the Facts as Alleged.

Plaintiff vaguely asserts a claim for "estoppel" on the theory that Defendants' retention of lender fees allegedly without the "intention of ever paying the Agents for the work they performed for the Borrowers" is "conduct amounting to misrepresentation or concealment of material facts" (Count VI). Am. Compl. ¶¶ 118–19. These allegations fail whether construed as a promissory estoppel or an equitable estoppel claim.

Under Illinois law, promissory estoppel requires "a promise unambiguous in terms, with reliance thereon by the promisee, with such reliance being expected and foreseeable by the promisor, and with the promisee in fact relying on the promise to his injury." *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1223 (7th Cir. 1991). The claim "is usually based on a promise of future action, not a representation of fact." *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 825 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017) (citation and internal quotation marks omitted).

Plaintiff fails to plead the requisite elements of this claim because it alleges no promise whatsoever by Defendants, and certainly no "unambiguous promise." *Id.* at 824 (dismissing promissory estoppel claim where plaintiff failed to "identify a specific promise or articulate exactly what the nature of the promise was"); *accord Yardley v. Yardley*, 484 N.E.2d 873, 879 (Ill. App. 2d Dist. 1985) (dismissal of promissory estoppel claim was proper in the absence of facts to support "definite promise").

Plaintiff also fails to plead an equitable estoppel claim, which is more typically an affirmative defense and in any event must be proven "by clear, precise and unequivocal evidence." *Joliet Mass Transit Dist. v. Illinois Fair Employment Practices Comm'n*, 85 Ill. App. 3d 270, 273 (Ill. App. 2d Dist. 1980). As a threshold matter, no equitable estoppel claim lies where defendant's conduct violated no duty and, rather, comported with the law "and the regulatory system effected by Congress." *Prestwick Capital Mgmt., Ltd.*, 727 F.3d at 665. Therefore, the equitable estoppel theory fails on the merits of Plaintiff's doomed PPP regulatory interpretations as discussed above.

Even if it were otherwise viable, the theory also fails because Plaintiff does not allege with any level of particularity a "misrepresentation by the party against whom estoppel is

asserted," much less "reasonable reliance on that misrepresentation by the party asserting estoppel." *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). Plaintiff premises its claim on Defendants' participation in the PPP program and nonpayment of agent fees in the absence of a written agreement to pay such fees, Am. Compl. ¶¶ 44, 118, but fails to allege even after the opportunity to amend that any Defendant communicated with Plaintiff, or that Plaintiff received any message from any Defendant, *see id.* ¶ 118 (alleging that Defendants' mere participation in PPP generally "constitutes conduct amounting to misrepresentation or concealment"). Nor does Plaintiff purport to allege, even in conclusory fashion, that any such misrepresentation was intentional as is required to support such a claim. *See Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007) (mere misstatement of insurance benefits does not constitute "knowing misrepresentation" for purposes of equitable estoppel claim); *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 464 (7th Cir. 2005) (similar).

Plaintiff also does not allege it reasonably relied on any misrepresentation or concealment by Defendants, or that any Defendant "by his or her statements and conduct le[d] a party to do something that the party would not have done." *Prestwick Capital Mgmt., Ltd. v. Peregrine Fin. Grp., Inc.*, 727 F.3d 646, 662–63 (7th Cir. 2013) (affirming dismissal of equitable estoppel claim). To the contrary, Plaintiff alleges that it relied on its own (flawed) interpretation of the SBA and the PPP regulations, Am. Compl. ¶ 52 ("Plaintiff reasonably relied on the existing SBA Regulations to expect its earned Agent Fees from the Lenders after the funding of its respective clients' PPP loan."), and insists that it had no knowledge of Defendants' interpretation, Am. Compl. ¶ 120 ("At all relevant times, Plaintiff and the other Agents in the Class were unaware that after they performed their services on behalf the Borrowers, Defendants would try to rely on a tortured and unreasonable interpretation of the SBA Regulations to deny them Agent Fees.").

This also dooms this claim. *See Coca-Cola Co. Foods Div. v. Olmarc Packaging Co.*, 620 F. Supp. 966, 970 (N.D. Ill. 1985) (dismissing equitable estoppel defense where defendant "failed to allege it changed its position to its detriment in reliance on any [] conduct" by plaintiff").

Lastly, Plaintiff's allegations cannot be construed as asserting estoppel arising from Defendants' silence regarding its interpretation of the law and regulations. Plaintiff asserts not that Defendants were *silent* but just the opposite: that Defendants "often cite to their own internal policies, or lack of non-required procedures (*i.e.*, no agreement between Defendant and Plaintiff as to Agent Fees or no Agent disclosure and unawareness of an Agent's existence), for refusing to pay the Agent Fees." Am. Compl. ¶ 44. Such allegations defeat any claim that Defendants promised the payment Plaintiff now seeks.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Amended Complaint in its entirety and with prejudice.

Dated: September 28, 2020

Respectfully submitted,

By:   **GRANT LAW, LLC**

*/s/ Maurice Grant*

Maurice Grant
Senija Grebovic
230 West Monroe Street, Suite 240
Chicago, IL 60606
Telephone: (312) 551-0111
mgrant@grantlawllc.com
sgrebovic@grantlawllc.com

**WILLIAMS & CONNOLLY LLP**
Enu A. Mainigi (admitted pro hac vice)
Kenneth C. Smurzynski (admitted pro hac vice)
Craig D. Singer (admitted pro hac vice)
Jesse T. Smallwood (admitted pro hac vice)
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
emainigi@wc.com
ksmurzynski@wc.com
csinger@wc.com
jsmallwood@wc.com

*Attorneys for Defendants*
*Bank of America Corporation and Bank of*
*America, N.A.*

*/s/ Thomas V. Panoff*

**MAYER BROWN LLP**
Lucia Nale
Thomas V. Panoff
Christopher S. Comstock
Samuel P. Myler
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
lnale@mayerbrown.com
tpanoff@mayerbrown.com
ccomstock@mayerbrown.com
smyler@mayerbrown.com

*Attorneys for Defendant*
*Wintrust Bank, N.A.*

/s/ Richard E. Gottlieb

**MANATT, PHELPS & PHILLIPS, LLP**
Richard E. Gottlieb
Brett J. Natarelli
A. Paul Heeringa
151 North Franklin Street, Suite 2600
Chicago, Illinois  60606
Telephone: (312) 529-6300

*Attorneys for Defendants Cross River Bank*
*(mistakenly sued as Cross River Bank, Inc.)*
*and Modern Bank, N.A.*

32

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 28th day of September 2020, true and correct copies of Defendants' Motion to Dismiss for Failure to State a Claim were filed with the Court, and served on Plaintiff's counsel, via CM/ECF.


 /s/ *Maurice Grant*
Maurice Grant