**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| A.D. SIMS, LLC, on behalf of a class of similarly situated businesses and individuals, | |
| Plaintiff(s), | |
| v. | Case No. 1:20-cv-02644 |
| WINTRUST FINANCIAL CORPORATION; WINTRUST BANK, N.A.; BANK OF AMERICA CO.; BANK OF AMERICA N.A.; RETAIL CAPITAL LLC DBA CREDIBLY; MODERN BANK MANAGEMENT, LLC; MODERN BANK N.A.; CRB GROUP INC.; CROSS RIVER BANK; BLUEVINE CAPITAL INC.; and DOE LENDERS 1 to 4,975, inclusive, | Hon. Edmond E. Chang |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

    I.      PLAINTIFF MISREADS THE CARES ACT AND THE IMPLEMENTING REGULATIONS, AS SIX COURTS HAVE NOW CONFIRMED. ............... 3

        A.  Defendants Are Not Required to Pay an Agent Fee Absent a Compensation Agreement by Each Lender with the Agent. ...................................................... 3

        B.  Plaintiff Does Not Satisfy the Requirement of a "Compensation Agreement" by "Agreeing" Solely with the Borrower ........................................................ 5

        C.  Defendants Are Not Equitably Estopped From Requesting That Plaintiff Comply with SBA Regulations. ....................................................................... 8

        D.  Plaintiff Cannot Overcome the Consensus of Opinions that Have Decided This Same Issue. .................................................................................................. 9

    II.     PLAINTIFF CONCEDES THAT THE CARES ACT LACKS A PRIVATE RIGHT OF ACTION, WHICH ADMISSION IS FATAL TO ITS FEDERAL CAUSES OF ACTION. .............................................................................. 11

    III.   PLAINTIFF CANNOT OVERCOME THE MANY DEFECTS IN ITS STATE LAW CLAIMS. ............................................................................................. 12

        A.  Plaintiff Does Not State a Conversion Claim. ............................................... 12

        B.  Plaintiff's Unjust Enrichment Claim Fails Because It Does Not Allege a "Better Claim" to Fees. ................................................................................... 13

        C.  Plaintiff's Equitable Estoppel Claim Fails Because It Does Not Allege Reliance or Misrepresentation. ..................................................................... 14

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Am. Video Duplicating Inc., et al. v. Citigroup Inc., et al.*, No. 2:20-cv-03815-ODW-AGR, 2020 WL 6712232 (C.D. Cal. Nov. 16, 2020) .................................................... passim

*Am. Video Duplicating, Inc. v. City National Bank, et al.*, No. 2:20-cv-04036-JFW-JPR, *slip op.* (C.D. Cal. November 20, 2020) .......................................................... passim

*Auer v. Robbins*, 519 U.S. 452 (1997) ........................................................................10

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984) .....................................6, 14

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984) .....................10

*Fonda v. General Casualty Co.*, 279 Ill. App. 3d 894 (1996) ........................................................13

*Gates v. Towery*, 435 F. Supp. 2d 794 (N.D. Ill. 2006) .................................................................13

*Goodpaster v. City of Indianapolis*, 736 F.3d 1060 (7th Cir. 2013) ...............................................11

*In re Thebus*, 483 N.E.2d 1258 (Ill. 1985) ................................................................................12

*Juan Antonio Sanchez, PC v. Bank of South Texas, et al.*, No. 7:20-cv-139, 2020 WL 6060868 (S.D. Tex. Oct. 14, 2020) .................................................................... passim

*Kennedy v. United States*, 965 F.2d 413 (7th Cir. 1992) ..................................................................8

*Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049 (7th Cir. 2019) .........................15

*Leigh King Norton & Underwood, LLC v. Regions Financial Corporation, et al.*, No. 2:20-cv-591-ACA, 2020 WL 6273739 (N.D. Ala. Oct. 26, 2020) .....................................1, 11

*Robin Johnson d/b/a CG Johnson & Company, et al. v. JPMorgan Chase Bank, N.A., et al.*, No. 20-cv-4100 (JSR), 2020 WL 5608683 (S.D.N.Y. Sept. 21, 2020) .................... passim

*Roderick Development Investment Co., Inc. v. Community Bank of Edgewater*, 282 Ill. App. 3d 1052 (1996) .................................................................................................13

*Runnemede Owners, Inc. v. Crest Mortg. Corp.*, 861 F.2d 1053 (7th Cir. 1988) .........................13

*Schilling v. Rogers*, 363 U.S. 666 (1960) .....................................................................................11

*Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 3:20-cv-5425-TKW-HTC, 2020 WL 4882416 (N.D. Fla. Aug. 17, 2020) .......................................................................... passim

*Steven L. Steward & Associates, P.A. v. Truist Bank & Truist Fin. Corp.*, No. 620CV1083ORL40GJK, 2020 WL 5939150 (M.D. Fla. Oct. 6, 2020) ...........................2, 11

## OTHER AUTHORITIES

13 C.F.R. § 103.1 .................................................................................................5

13 C.F.R. § 103.5 ..........................................................................................5, 6, 7, 9

85 Fed. Reg. 20,811 .......................................................................................3, 7, 8

85 Fed. Reg. 20,816 .......................................................................................3, 4, 8

15 U.S.C. § 636 ..................................................................................................4

Pub. L. 111-31 (2020) ........................................................................................1

Pub. L. 116-136, § 1102(e), 134 Stat. 281, 294 (Mar. 27, 2020)...............................4, 5

## INTRODUCTION

Plaintiff frames the issue before the Court as whether, under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 111-31 (2020), Plaintiff is "permitted to collect agent fees from defendants for [Paycheck Protection Program ("PPP")]-related services it provided to the borrowers." Opp. at 8. Framed more objectively, Plaintiff seeks by this suit to require Defendant to pay it fees that Defendants never agreed to pay, for work they did not even know Plaintiff allegedly was performing.

The CARES Act imposes no such requirement. In just the last three months, every court to have addressed this identical issue has squarely held that PPP lenders are not required to pay agent fees absent an agreement between the parties to do so. *See Juan Antonio Sanchez, PC v. Bank of South Texas, et al.*, No. 7:20-cv-139, 2020 WL 6060868, at *2 (S.D. Tex. Oct. 14, 2020) (Alvarez, *J.*) (joining "the emerging consensus described by the Northern District of Florida and Southern District of New York" in dismissing similar claims); *Leigh King Norton & Underwood, LLC v. Regions Financial Corporation, et al.*, No. 2:20-cv-591-ACA, 2020 WL 6273739, at *7 (N.D. Ala. Oct. 26, 2020) (Axon, *J.*) ("Accordingly, the court finds that the Small Business Act does not make payment of agent fees mandatory."); *Am. Video Duplicating Inc., et al. v. Citigroup Inc., et al.*, No. 2:20-cv-03815-ODW-AGR, 2020 WL 6712232, at *4 (C.D. Cal. Nov. 16, 2020) (Wright, *J.*) ("*American Video I*") ("[E]very court that has decided this issue has held that the CARES Act does not require lenders to pay agent fees absent an agreement to do so, nor does it create a corresponding private right of action."); *Am. Video Duplicating, Inc. v. City National Bank, et al.*, No. 2:20-cv-04036-JFW-JPR, *slip op.*, at 1 (C.D. Cal. November 20, 2020) (Walter, *J.*) ("*American Video II*") ("The Court agrees with the analysis in [*American Video I*], and with the decisions from four other courts across the country that have unanimously concluded that 'the CARES Act does not require lenders to pay agent fees absent an agreement to do so.'"); *Robin Johnson d/b/a CG Johnson & Company, et al. v. JPMorgan Chase Bank, N.A., et al.*, No. 20-cv-4100 (JSR), 2020 WL 5608683, at *1 (S.D.N.Y. Sept. 21, 2020) (Rakoff, *J.*) ("The Court holds that, absent an agreement between agent and lender, defendant banks are

1

not required to pay agent fees."); *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 3:20-cv-5425-TKW-HTC, 2020 WL 4882416, at *1 (N.D. Fla. Aug. 17, 2020) (Wetherell, *J.*) ("The central issue of first impression in this case is whether Plaintiff and others like it are entitled to any portion of the fees paid . . . under the [PPP].  The short answer is no.") (quotation marks and footnote omitted).[1]

These cases unanimously and persuasively reject the linchpin of Plaintiff's argument, based solely on one line of the Small Business Administration's ("SBA") Interim Final Rule ("IFR") concerning PPP loans.  Plaintiff claims that the IFR—rather than merely specifying *who* may pay agent fees when agent fees are payable—somehow overrides express statutory text and requires lenders to pay agent fees even when the lender never agreed to do so and did not know the agent existed.  Plaintiff further asserts that it can satisfy the SBA's longstanding requirement of a "compensation agreement" by "agreeing" *with the borrower* that *the lender will pay the agent*.  As the *Sanchez* court aptly put it, "Plaintiff believed that it could serve as applicants' agent, kick its feet up and wait for the banks to issue PPP loans to successful applicants, and only then notify Defendant banks of its agency role and demand payment."  *Sanchez,* 2020 WL 6060868, at *9.  That interpretation is wrong: It is "simply unmoored from the text," "not how the PPP works," *id.* at *6, *9, and would upend longstanding SBA requirements for agent fees.

Plaintiff also fails to explain why the lack of a private right of action in the CARES Act is not dispositive to its federal claims.  Finally, Plaintiff cannot rebut the independent reasons why Plaintiff's state law claims fail.

---

[1] A seventh court, *Steven L. Steward & Associates, P.A. v. Truist Bank & Truist Fin. Corp.*, No. 620CV1083ORL40GJK, 2020 WL 5939150, at *3 (M.D. Fla. Oct. 6, 2020) (Byron, *J.*), has likewise dismissed nearly identical claims for failure to plead unjust enrichment and standing for declaratory relief.  No agent-fee case has survived a motion to dismiss to date.  In addition, other plaintiffs alleging similar claims have voluntarily dismissed dozens of cases after courts began rejecting plaintiffs' theory of liability.

**ARGUMENT**

**I. PLAINTIFF MISREADS THE CARES ACT AND THE IMPLEMENTING REGULATIONS, AS SIX COURTS HAVE NOW CONFIRMED.**

Plaintiff's Opposition relies entirely on a purported entitlement to fees that simply does not exist and is not supported by the text of the CARES Act or Section 7(a). As six courts have now confirmed in well-reasoned decisions, *supra* p. 1–2, the CARES Act and the Small Business Administration's ("SBA") IFR, 85 Fed. Reg. 20,811, only imposes *limits* on the fee that an agent *may* receive from a PPP lender if a valid agreement between the parties exists, and nowhere mandates that the lender pay a fee without an agreement between the lender and the agent. Plaintiff presents no reason for the Court to deviate from this well-reasoned and unbroken line of authority, and which is consistent with the SBA's longstanding framework governing agent fees.[2]

**A. Defendants Are Not Required to Pay an Agent Fee Absent a Compensation Agreement by Each Lender with the Agent.**

Plaintiff insists that the IFR upends the SBA's longstanding framework requiring a compensation agreement because the IFR's answer to the question "[w]ho pays the fee to an agent who assists a borrower?" is that "[a]gent fees will be paid by the lender out of the fees the lender receives from the SBA." 85 Fed. Reg. 20,816. *See* Opp. at 9–10. But this section of the IFR does not bring about the significant regulatory change that Plaintiff suggests. On the contrary, the phrase "will be paid" refers only to the mandate that *when* an agent is to be paid fees pursuant to an agreement between the parties, such fees will be paid by the lender out of the fees the lender receives from the SBA, not from the loan proceeds or from the borrower, and may not exceed a certain percentage of the loan. *See Sport & Wheat*, 2020 WL 4882416, at *3 ("[The IFR] simply explains that, if an agent is to be paid a fee, the fee must be paid by the

---

[2] Plaintiff defines itself as an "*accounting* and consulting firm," a description nowhere found in the Amended Complaint. Opp. at 2. Further, public records confirm that neither Plaintiff nor its principal (Aaron Sims) are licensed in Illinois as public accountants with the Illinois Department of Financial and Professional Regulation. *See* https://ilesonline.idfpr.illinois.gov/DFPR/Lookup/LicenseLookup.aspx (last accessed November 23, 2020).

3

lender from the fee it receives from the SBA."); *Johnson*, 2020 WL 5608683, at *7 ("[I]f Congress had intended for agents to automatically receive a portion of the lenders' fees, it would have said so.").

This reading is "bolstered by the fact that when Congress wanted to compensate parties involved in processing PPP loan applications, as is the case with lenders, it did so explicitly." *Johnson*, 2020 WL 5608683, at *7 (citing 15 U.S.C. § 636(a)(36)(P)(i)). The CARES Act, by contrast, instructs the SBA to set *limits* on the fees that an agent "*may . . . collect.*" 15 U.S.C. § 636(a)(36)(P)(ii) (emphasis added).

Underscoring that distinction, Section III.3.d of the IFR mandates that *lenders* receive fees at a fixed amount based on loan size. *See* 85 Fed. Reg. 20,816. In contrast, Section III.4.c only imposes *maximums* on the amount that *agents* may receive. Setting a "maximum" only makes sense if the lender has a say in negotiating the fee—otherwise, how could there ever be a payment less than the maximum? *See Johnson*, 2020 WL 5608683, at *6 n.14 (noting that plaintiffs could not "even extract a definite theory of how much they are owed," "itself an indication that the statute does not automatically entitle them to any portion of the fees"). Therefore, the IFR clearly contemplates that any agent fees will be paid pursuant to an agreement between the lender and the agent, which agreement will specify the amount of those fees up to the IFR's maximum. Consistent with longstanding regulations, that agreement would then be disclosed to the SBA. Tellingly, while Defendants' Motion emphasized that the "maximum" fee is inconsistent with Plaintiff's theory, Mot. at 17, Plaintiff's Opposition does not address this point.

Instead, Plaintiff repeatedly seeks to draw a distinction between "Borrower's Agents" and "Lender's Agents," claiming that the requirement of a compensation agreement only applies to "Lender's Agents." *See, e.g.*, Opp. at 15. Plaintiff is mistaken. As an initial matter, in making this distinction, Plaintiff relies on regulations that were expressly rescinded by the CARES Act. *See* Pub. L. 116-136, § 1102(e), 134 Stat. 281, 294 (Mar. 27, 2020). Plaintiff, moreover, refers to regulations governing Lender Service Providers, a specific type of agent that is not at issue

here, when purporting to describe the requirements for all "Lender's Agents."[3]  The regulations that apply here do not support Plaintiff's imagined distinction.  Regardless of who retains the agent, SBA regulations make clear that "*Any . . . Agent . . . must execute and provide to SBA a compensation agreement . . . [that] governs the compensation charged for services rendered or to be rendered to the Applicant or lender.*"  13 C.F.R. § 103.5(a).  The SBA's Standard Operating Procedures are in accord: "For all other Agents [besides Lender Service Providers, who must instead submit a separate written agreement to the SBA] *paid by either an Applicant or a Lender*, [the] SBA Form 159 [compensation agreement] must be completed and signed by the Applicant and the Lender."  Mot. Exhibit 12 at 7 (emphases added).

> **B.**     **Plaintiff Does Not Satisfy the Requirement of a "Compensation Agreement" by "Agreeing" Solely with the Borrower.**

Plaintiff puts forth a number of arguments seeking to justify its failure to satisfy the requirements for agent fees.  Each is meritless.

First, Plaintiff contends that it satisfied the requirement of a compensation agreement because it entered into "compensation agreements" *with borrowers* that Defendants lack authority to negotiate, modify, or reject.  Opp. at 12.  In other words, as Plaintiff would have it, the *agent and borrower* may enter into a "compensation agreement" *binding the lender* to pay the "compensation."  The Amended Complaint contains no allegations of such "agreements."[4]

---

[3] Plaintiff quotes from 13 C.F.R. § 103.5(c) for the proposition that lenders must enter into "written agreements" with "Lender's Agents."  Opp. at 15 (incorrectly citing to § 103.1(c)).  That provision refers to "Lender Service Providers," an agent that "carries out lender functions in originating, disbursing, servicing, or liquidating a specific SBA business loan" and that solely works with and is paid by lenders.  13 C.F.R. § 103.1(d) (reinstated by Pub. L. 116-136, § 1102(e), 134 Stat. 281, 294 (Mar. 27, 2020)).  As Plaintiff notes, agents that do not qualify as Lender Service Providers can assist and be paid by either borrowers or lenders.  Opp. at 5 (citing SBA's Standard Operating Procedure at 173).  But those agents must still execute a compensation agreement governing the payment of those fees.  13 C.F.R. § 103.5(a).  Plaintiff is thus wrong to suggest that lenders only enter into written compensation agreements with Lender Service Providers.  To the contrary, lenders enter into compensation agreements whenever they agree to pay an agent fees—whether the agent assists the borrower, assists the lender, or is a Lender Service Provider.

[4] To the contrary, in its Amended Complaint, Plaintiff argued that "[a]ll that is required is

But even assuming Plaintiff entered into agreements with its clients, Plaintiff's theory that an agreement between the agent and the borrower can bind the lender is outlandish and directly contrary to the SBA regulations that require the compensation agreement be with the lender. All courts to consider this issue have so held. *See, e.g.*, *Sanchez*, 2020 WL 6060868, at *2 ("[A]gents who assist applicants with a PPP [loan application] are not entitled to agent fees in the absence of an agreement *with the lenders*.") (emphasis added); *American Video II*, at 4 ("By requiring a compensation agreement to which the lender and applicant also are parties before an agent may receive a fee, 13 C.F.R. § 103.5(a), the SBA made agent compensation an issue to be settled *by contract* among the lender, applicant, and agent—not a statutory or regulatory entitlement."). That makes good sense: Under the IFR, the only party that can pay agent fees is a lender. Thus, any agreement to which a *payor* is not a party—such as the supposed agreement between Plaintiff and its client—is by definition not a "compensation agreement" that can bind the lender.

SBA guidance is also in accord. The SBA's Standard Operating Procedures, in effect at all operative times, provide that

> For all other Agents [besides Lender Service Providers, who must instead submit a separate written agreement to the SBA] paid by either an Applicant or a Lender, SBA Form 159 must be completed and signed by the Applicant and the Lender. For each Agent paid by the Applicant to assist it in connection with its application, the Agent also must complete and sign the form. When an Agent is paid by the Lender, the Lender must identify the Agent on SBA Form 159 and the Lender and Applicant must sign the form.

Mot. Exhibit 12. In *every case*, the compensation agreement must be signed by the lender.

Plaintiff's argument that Defendants do not have the "authority" to "negotiate or modify," Opp. at 14, Plaintiff's purported agent's fee is therefore incorrect. The IFR only sets caps for agent fees, and the putative agent is still required to contact the lender in advance, obtain

---

that the [a]gent fit into one of the broad categories outlined in [SBA regulations] and do the work in connecting the [b]orrower to the PPP funds," Am. Compl. ¶ 30. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

the lender's agreement to pay fees to the agent and the amount of the fees the lender is willing to pay, and enter into the required compensation agreement, all of which Plaintiff failed to do here.

Second, Plaintiff contends that it can secure fees even without complying with the SBA's requirement of a Form 159 disclosing a compensation agreement. Plaintiff is simply wrong that Form 159 was somehow "superseded" by the IFR. Opp. at 16. The IFR states explicitly that only "*conflicting* Loan Program Requirements" are "temporarily supersede[d]" by the PPP. 85 Fed. Reg. 20,812 (emphasis added).[5] Nothing in the IFR or the CARES Act conflicts with the requirement under 13 C.F.R. § 103.5(a) that the parties execute a compensation agreement, provided by the SBA on Form 159. *See Sport & Wheat*, 2020 WL 4882416, at *4 ("Form 159 does not conflict with the IFR."). The argument is also "beside the point," because "[t]he question is whether the PPP supersedes [Section] 103.5(a), not the form compensation agreement promulgated under that regulation." *Sanchez*, 2020 WL 6060868, at *8; *see also American Video I*, 2020 WL 6712232, at *5 ("The question before the Court is *whether the IFR conflicts with the Section 7(a) requirement that a Form 159 must be executed and submitted to the SBA*, not whether the application form for a PPP loan appears different than the application form for a standard Section 7(a) loan."). Plaintiff thus fundamentally errs by focusing exclusively on Form 159, and not the underlying requirement of a compensation agreement that the Form merely implements.

Next, in a telling concession, Plaintiff acknowledges that "Form 159 may be required," Opp. at 21, but attempts to skirt the obligation for an agent to enter into an agreement with the lender by suggesting that, for the PPP, the agent fee is not paid by the lender but by the SBA.

---

[5] Plaintiff points to various aspects of the PPP that *do* supersede section 7(a)—for example, Section 7(a) "does not allow an [a]gent to charge a fee contingent on the funding of a loan," while the PPP does, Opp. at 5–6—but none of the differences Plaintiff points to has anything to do with the SBA's compensation agreement requirement. Defendants do not dispute that by setting the maximum amount of an agent fee, the IFR "temporarily supersede[s]" the portion of 13 C.F.R. § 103.5(b) that sets a different maximum amount of agent fees payable under the 7(a) program. To the extent Plaintiff is contending that because one provision of section 103.5 is superseded by the IFR, the entire regulation is, Opp. at 5–6, Plaintiff offers no support for that proposition, and it is wrong.

Opp. at 3, 5. But this argument disregards the plain language of the IFR upon which Plaintiff relies for its alleged entitlement to a fee, providing that if agent fees are to be paid, they "will be paid *by the lender*. . . ." *See* 85 Fed. Reg. 20,816 (emphasis added); *see also* 85 Fed. Reg. 20,811-01(III)(4)(c) (emphasis added) ("The total amount that an agent may collect *from the lender* for assistance in preparing an application for a [PPP] loan . . . may not exceed [specified percentages dependent on loan amount.]"); *see also American Video I*, 2020 WL 6712232, at *5.

Finally, coming full circle, Plaintiff argues that, if Form 159 is required, it is now willing to complete and submit Form 159. Opp. at 16–19. But this assertion is also unavailing. Form 159 *documents*, but does not *replace*, the required underlying compensation agreement between the lender and the agent. Thus, as the *Johnson* court correctly recognized, "even if plaintiffs were correct that this particular form is inapplicable to the PPP, that would not itself dispose of the requirement that agents and lenders enter into an agreement in order for agents to receive fees." *Johnson*, 2020 WL 5608683, at *7 n.16. Completing and submitting a belated Form 159 does not remedy the lack of an *agreement* with Defendants.[6]

### C. Defendants Are Not Equitably Estopped From Requesting That Plaintiff Comply with SBA Regulations.

Plaintiff attempts to blame *Defendants for Plaintiff's* failure to comply with the regulatory requirements, asserting Defendants should be estopped from arguing that the law applies to Plaintiff. That is nonsense. A claim of equitable estoppel requires: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). Here, there was no misrepresentation, and any alleged reliance by Plaintiff is utterly implausible.

---

[6] Nor is Plaintiff's argument that it was *defendants'* responsibility to submit Form 159 persuasive or sensible. Defendants would have had to know of the agent's existence and demand for payment soon after the loan was funded in order to submit the required monthly paperwork, Mot. Exhibit 12 at 171, and Plaintiff makes no allegation that Defendants had this knowledge.

8

Plaintiff baldly claims that "Defendants hid Form 159 during the application process." Opp. at 20. Of course, there is no such allegation in the Amended Complaint, nor could Defendants have concealed the *publicly-available* Form 159 or the SBA's 24-year-old rule requiring lenders, agents, and applicants to negotiate the agent relationship. Those requirements are detailed in the longstanding SBA rules and regulations. 13 CFR § 103.5(a) (providing that the "SBA provides the form of compensation agreement…to be used by Agents").

If Plaintiff "spent considerable time becoming familiar with the [CARES] Act and the related SBA Regulations," Am. Compl. ¶ 47, it surely was well aware of Form 159, which is on the SBA's website and easily accessible. Form 159 makes clear that it "must be completed and signed by the SBA Lender and Applicant whenever an Agent is paid by either the Applicant or the SBA Lender in connection with the SBA loan application." Mot. Exhibit 2. Plaintiff provided no reason why it chose to ignore this instruction, or the SBA Regulations, regardless of any of the Defendants' alleged conduct. What is more, the Association of International Certified Public Accountants ("AICPA") specifically warned accounting firms, such as Plaintiff, that "there is a possibility that you will not be paid for your services" and advised potential agents to "discuss this issue with clients *and the banks* to ensure there is an understanding, preferably in writing, as to how and when any fees will be paid." Mot. Exhibit 6 (emphasis added).

Nevertheless, it is the legal requirement of a compensation agreement, not Form 159 itself, that defeats Plaintiff's claim. Plaintiff cites no authority for the proposition that a litigant may be "equitably estopped" from correctly interpreting the law, and it is nonsensical to suggest otherwise. In short, Defendants could not (and did not) hide longstanding government regulations and publicly available forms from Plaintiff, and surely Defendants cannot be estopped from arguing correctly that the CARES Act and SBA regulations mean what they say.

### D. Plaintiff Cannot Overcome the Consensus of Opinions that Have Decided This Same Issue.

Plaintiff asserts that the reasoning in a unanimous line of opinions dismissing agent fee cases "is not on point and/or is faulty" and the decisions are not "dispositive," Opp. at 21, but all of these cases decide the same issue presented here and are persuasive, and no court has held

otherwise.  *See Sanchez, PC*, 2020 WL 6060868, at \*2 (joining "the emerging consensus" that the CARES Act and IFR do not entitled agents to fees without a compensation agreement); *American Video I*, 2020 WL 6712232, at \*4 ("It appears every court that has decided this issue has held that the CARES Act does not require lenders to pay agent fees absent an agreement to do so, nor does it create a corresponding private right of action. . . . The Court sees no reason to depart from these conclusion."); *see also American Video II*, at 8.[7]

Plaintiff also claims that these courts misapprehended the Supreme Court's decisions in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), and *Auer v. Robbins*, 519 U.S. 452 (1997).  Opp. at 11 & n.6–7.  But *Chevron* and *Auer* govern only the circumstances in which a court should defer to *an agency's* interpretation of the statute it administers.  Plaintiff cannot invoke this case law to urge this Court to adopt *Plaintiff's* interpretation of the CARES Act without showing that the SBA adopted that interpretation in the IFR.  All six of the courts that have rejected Plaintiff's theory have concluded that the SBA *did not* mandate that lenders pay agents fees, and thus they did not commit "reversible error" by failing to consider whether *Plaintiff's* (not the SBA's) implausible reading of the IFR should receive *Chevron* deference.  *See, e.g.*, *American Video II*, at 5 n.2.

In fact, the only relevant agency guidance, from Congressional testimony by the Secretary of the Treasury, undercuts Plaintiff's theory.  Mot. at 9–10.  Plaintiff dismisses the Secretary's testimony, arguing, in effect, that the Secretary could not have meant what he said because it would conflict with Plaintiff's theory.  Opp. at 15–16 & n.10.  But Plaintiff's explanation for what the Secretary meant to say—that he was referring only to "Lender's Agents," *id.* at n.10, a term that appears nowhere in the applicable regulations—is implausible. The Secretary said unequivocally that the obligation to pay any agent fees must be "based upon a contractual relationship between the agent and the bank," Mot. Exhibit 1, which testimony is

---

[7] Many of the same law firms in this case, in fact, represented plaintiffs in the recently dismissed *American Video I* and *American Video II* cases.

consistent with the plain text of the CARES Act and the IFR and the opinions of every court to have addressed the issue.

## II.  PLAINTIFF CONCEDES THAT THE CARES ACT LACKS A PRIVATE RIGHT OF ACTION, WHICH ADMISSION IS FATAL TO ITS FEDERAL CAUSES OF ACTION.

Plaintiff admits that the PPP provisions of the CARES Act do not provide a private right of action, Opp. at 21, as every court to have considered the issue has held, *Sanchez*, 2020 WL 6060868, at *7 ("The Court joins the preexisting consensus that 'there is no private cause of action to enforce this [agent fee] provision of the CARES Act.'" (citation omitted)); *Leigh King*, 2020 WL 6273739, at *7–9 (same); *Johnson*, 2020 WL 5608683, at *8–9 (same); *American Video I*, 2020 WL 6712232, at *4 (same); *American Video II*, at 8 (same); *see also Sport & Wheat*, 2020 WL 4882416, at *3 n.6 (noting that "it is doubtful that . . . a private right of action exists" under the CARES Act, but declining to reach the question "because the claim asserted by [p]laintiff under the [Declaratory Judgment Act] clearly fails on the merits"); *Steward*, 2020 WL 5939150, at *3 (same).

This concession is fatal to Plaintiff's three federal causes of action. Plaintiff's Opposition does not dispute that a claim for declaratory relief (Count I) must be predicated on an underlying substantive cause of action, and that the CARES Act provides none. *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (holding that the "availability of [declaratory] relief presupposes the existence of a judicially remediable right"); *Sport & Wheat*, 2020 WL 4882416, at *4; *Johnson*, 2020 WL 5608683, at *8; *Sanchez*, 2020 WL 6060868, at *5; *American Video II*, at 9. Nor does Plaintiff marshal any argument in support of its claims under the CARES Act (Count II) or the SBA's 7(a) Loan Program (Count III). Accordingly, these three claims should be dismissed. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (affirming dismissal of claims because the plaintiff "failed to respond to the [defendant's] arguments against these claims in their reply to the [defendant's] motion to dismiss," and "did not provide the district court with any basis to decide their claims, . . . these claims are waived").

Instead, Plaintiff spends almost three pages of its brief arguing that the lack of a private right of action does not foreclose Plaintiff's *state law claims*. Opp. at 20–23. *But Defendants never argued that it did.* Defendants instead argued that the lack of a private right of action foreclosed Plaintiff's claims under the CARES Act, Section 7(a), and the Declaratory Judgment Act. As for Plaintiff's state law claims, Defendants demonstrated that those claims should be dismissed because Plaintiff cannot plead their necessary elements.

## III. PLAINTIFF CANNOT OVERCOME THE MANY DEFECTS IN ITS STATE LAW CLAIMS.

Plaintiff alleges no facts and cites no authorities that could save its state law claims.

### A. Plaintiff Does Not State a Conversion Claim.

Plaintiff does not dispute that its conversion claim is predicated solely on its asserted entitlement to agent fees under SBA regulations. Opp. at 24. Because there is no such entitlement, this claim fails. Four courts have already dismissed conversion claims brought by PPP agents for this reason. *Sanchez*, 2020 WL 6060868, at *10 (no conversion claim where plaintiff is not entitled to PPP fees); *Sport & Wheat*, 2020 WL 4882416, at *4 (same); *Johnson*, 2020 WL 5608683, at *10 (same); *American Video II*, at 11 (same). This court should do the same.

In addition, Plaintiff cites no authority to support its contention that agent fees are a proper subject of a conversion claim. Plaintiff contends that the claimed agent fees "are not merely a debt that may be generally satisfied by any money because Defendants are required to pay the Agent Fees out of the specific lender processing fee they received from the SBA based upon specified rates and funded loans only." Opp. at 26. But the proposition that agent fees must be paid "out of" lender processing fees does not render the agent fees themselves "a specified identifiable fund capable of being the subject of a conversion." *In re Thebus*, 483 N.E.2d 1258, 1261 (Ill. 1985). To the contrary, because the IFR nowhere creates a mandatory entitlement to a set amount of fees and instead merely purports to set *maximum* fee amounts, Mot. at 17, Plaintiff can provide nothing more than an estimate of the agent fees allegedly owed. This important fact distinguishes this case from the authorities Plaintiff cites, and it demonstrates

12

that the alleged agent fees cannot sustain a conversion claim. *See Roderick Development Investment Co., Inc. v. Community Bank of Edgewater*, 282 Ill. App. 3d 1052, 1062 (1996) (plaintiff stated conversion claim where funds were "specific and identifiable" and "not estimated"); *Fonda v. General Casualty Co.*, 279 Ill. App. 3d 894, 905 (1996) (plaintiff stated conversion claim for insurance proceeds where defendant had notice of plaintiff's security interest in the amount of $28,700 but delivered the money to plaintiff's debtor); *Gates v. Towery*, 435 F. Supp. 2d 794, 801 (N.D. Ill. 2006) (two plaintiffs sufficiently stated conversion claims where police officers seized "specific amounts of money from them").

Finally, Plaintiff does not dispute that it failed to make a pre-suit demand. Instead, Plaintiff argues that any such demand would have been futile. Opp. at 26. But in the case Plaintiff cites for this proposition, *Brodsky v. HumanaDental Ins. Co.*, a demand for return of the product was literally futile because the product no longer existed. No. 10-C-3233, 2011 WL 529302, at *6, *9 (N.D. Ill. Feb. 8, 2011) (demand for return of "lost paper, toner, ink and use of the facsimile machine," was futile because "the alleged fax transmission presumably materially altered the paper and toner from their original state"). Plaintiff's "belief that [the] demand would have been refused" is insufficient to establish futility. *Runnemede Owners, Inc. v. Crest Mortg. Corp.*, 861 F.2d 1053, 1060 (7th Cir. 1988).

### B. Plaintiff's Unjust Enrichment Claim Fails Because It Does Not Allege a "Better Claim" to Fees.

Plaintiff acknowledges that it must establish that it has a "better claim" to the alleged agent fees than Defendants in order to show that an unjustly retained benefit was transferred to Defendants by a third party, the SBA. Opp. at 27. But Plaintiff offers no explanation for why it has a better claim, except to reiterate its erroneous theory of an entitlement to agent fees under the CARES Act. Thus, Plaintiff's conversion claim necessarily fails for the same reason its CARES Act claim fails. Plaintiff's contention that this claim "does not 'stand or fall' with its other causes of action" is therefore incorrect.

### C. Plaintiff's Equitable Estoppel Claim Fails Because It Does Not Allege Reliance or Misrepresentation.

In its opposition, Plaintiff for the first time specifically alleges that Defendants have misrepresented their positions on agent fees "through action, inaction and silence" and that Plaintiff relied on these misrepresentations. Opp. at 28. As an initial matter, Plaintiff's attempt to add new facts is improper because "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers*, 745 F.2d at 1107. But even so, this characterization of Defendants' alleged conduct cannot save Plaintiff's equitable estoppel claim because Plaintiff still does not offer any facts to establish the elements of the claim.

As a threshold matter, Plaintiff does not dispute that its claim is based on the same flawed interpretation of the CARES Act and PPP regulations discussed above, for no equitable estoppel claim lies where defendant's conduct violated no duty and instead comported with the law. Mot. at 28 (citing *Prestwick Capital Mgmt.*, 727 F.3d at 662–63 (7th Cir. 2013)).

In addition, despite asserting that Defendants made misrepresentations, Plaintiff is unable to allege any actual communications between itself and Defendants. Nor does it satisfactorily explain how it could have relied on any misrepresentations by Defendants, where its Amended Complaint alleges Plaintiff "relied on the existing SBA Regulations to expect its earned Agent Fees from the Lenders," Am. Compl. ¶ 52, and insists Plaintiff was "unaware" that Defendants would rely on a different interpretation of the regulations to deny them Agent Fees," Am. Compl. ¶ 120.

Lastly, Plaintiff alleges that Defendants failed to request Form 159 and even "hid Form 159," despite believing it was required for agent fees, and that this shows "Defendants acted with actual or implied knowledge that their representations were untrue." Opp. at 29, 31. As discussed above (*supra*, p. 9), the claim that Defendants "hid" the law from Plaintiff is implausible. In any event, Plaintiff does not point to anything that would require Defendants to provide borrowers with Form 159 or solicit its completion.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Amended Complaint in its entirety. Dismissal should be with prejudice as Plaintiff has not offered any substantive proposal for amendment other than a cursory reference in its Opposition, and as shown above, no set of facts that could possibly cure the deficiencies in its Amended Complaint. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1052–53 (7th Cir. 2019) (although leave to amend should be freely granted, "this presumption may be overcome if the court finds . . . futility of the amendment").

Dated: November 23, 2020          Respectfully submitted,

                                  By:    **GRANT LAW, LLC**

*/s/ Maurice Grant*

Maurice Grant
Senija Grebovic
230 West Monroe Street, Suite 240
Chicago, IL 60606
Telephone: (312) 551-0111
mgrant@grantlawllc.com
sgrebovic@grantlawllc.com

**WILLIAMS & CONNOLLY LLP**
Enu A. Mainigi (admitted pro hac vice)
Kenneth C. Smurzynski (admitted pro hac vice)
Craig D. Singer (admitted pro hac vice)
Jesse T. Smallwood (admitted pro hac vice)
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
emainigi@wc.com
ksmurzynski@wc.com
csinger@wc.com
jsmallwood@wc.com

*Attorneys for Defendants*
*Bank of America Corporation and Bank of*
*America, N.A.*

*/s/ Thomas V. Panoff*

**MAYER BROWN LLP**
Lucia Nale
Thomas V. Panoff
Christopher S. Comstock
Samuel P. Myler
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
lnale@mayerbrown.com
tpanoff@mayerbrown.com
ccomstock@mayerbrown.com
smyler@mayerbrown.com

*Attorneys for Defendant*
*Wintrust Bank, N.A.*

/s/ Richard E. Gottlieb

**MANATT, PHELPS & PHILLIPS, LLP**
Richard E. Gottlieb
Brett J. Natarelli
A. Paul Heeringa
151 North Franklin Street, Suite 2600
Chicago, Illinois  60606
Telephone: (312) 529-6300

*Attorneys for Defendants Cross River Bank*
*(mistakenly sued as Cross River Bank, Inc.)*
*and Modern Bank, N.A.*

17

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 23rd day of November 2020, true and correct copies of Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss for Failure to State a Claim were filed with the Court, and served on Plaintiff's counsel, via CM/ECF.

_/s/ Maurice Grant_
Maurice Grant